**Andrew MACKEY, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Jan. 28, 1975.

Certiorari Denied by Supreme Court
April 12, 1976.

Charles O. Ragan, Jr., Chattanooga, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., Michael E. Terry, Asst. Atty. Gen., Nashville, Stephen M. Bevil and Thomas J. Evans, Asst. Dist. Attys. Gen., Chattanooga, for defendant-in-error.

## OPINION

WALKER, Presiding Judge.

In two cases heard together the jury convicted Andrew Mackey, the defendant below, of rape and fixed his punishment at 65 years and of armed robbery and fixed his punishment at 20 years in the penitentiary. The trial judge ordered consecutive sentences. Mackey appeals in error.

The state's evidence showed that about 1:30 p. m., April 24, 1974, Mrs. Laura Cline was alone in her Chattanooga home when the defendant, wearing a hard hat, rang her doorbell. He told her he worked for the electric power board and had been sent there to cut trees. A power board truck, later found to have been stolen, was parked outside.

Mackey looked up and down the street, asked if her husband were home; and when she said he was not, he forced his way into the house, choking her with one hand and holding a screwdriver to her ribs with the other. He demanded that she take off her pants. They struggled and she tried to divert him by offering him money. After taking money from her wallet and from a small wooden bank (plus money from another little bank), he finally forced her into the bedroom where he raped her.

Mackey demanded to know if there were any rifles in the house and threatened to kill her if she lied to him. After first telling him they had none, she told him the location of the gun cabinet and he took two rifles out of it.

After raping Mrs. Cline, he tied her up, ordered her to remain quiet and proceeded through the house, returning from time to time to see that she was still tied. He learned from her the location of the telephone and ripped it from the wall. He told her that if she called the police he would come back and kill her and further that if she called the police he would go to the penitentiary.

Mrs. Cline was finally successful in freeing herself and ran into the street half clothed and told the first person she saw that she had been raped. Mackey also ran from the house, leaving the hard hat there, and fled in the truck.

Mackey's fingerprints were found on the wooden bank he had broken into. Mrs. Cline gave his description to police and positively identified him at the trial. He was arrested in Georgia and confessed there to Chattanooga officers. His written confession of both crimes was admitted into evidence. In it he detailed his activities before, during and after the crimes.

The defendant filed a plea of not guilty and not guilty by reason of insanity. He did not testify before the jury but offered testimony from his mother and father as to his mental condition. They said that in the months before these incidents the defendant was not acting normally and seemed "off;" that he had suffered a head injury in high school and his behavior had changed. His parents said he did not appear to know the difference between right and wrong although they retreated from this to some extent on cross-examination.

In rebuttal the state called Dr. James Cheatham, a psychiatrist, who said he examined the defendant July 8, 1974, at the Hamilton County jail and found him to be without any mental disorder and competent to stand trial. In his opinion the defendant on April 24, 1974, had the mental capacity to distinguish right from wrong.

A number of assignments of error concern the defendant's sanity, both present and at the time of the crime.

■ In challenging the trial court's denial of his plea of present insanity, the defendant insists that he was entitled to a jury trial of that question, relying principally on Caruthers' *History of a Lawsuit,* Eighth Edition, Sec. 735.

In *Cogburn v. State,* 198 Tenn. 431, 281 S.W.2d 38 (1955), our Supreme Court said:

" '. . . (T)he method that shall be ordered of determining the present sanity of the accused before the beginning of the trial generally rests in the discretion of the trial judge, with or without the aid of a jury. He may inquire into the facts himself, or he may impanel a jury for the purpose if he sees fit, or he may submit the question as an issue to the trial jury.' "

Under this rule a defendant is not entitled to a jury trial on the issue of present insanity. The trial judge can make the determination himself which he did here. On the basis of all the relevant information before him, the trial judge found the defendant competent to stand trial. More was not required and this assignment is overruled.

Related to the first assignment are those saying (a) the court erred by denying his pretrial motion for a psychiatric examination; (b) the brief examination of defendant by Dr. Cheatham was so inadequate that it deprived him of his due process rights and (c) the court erred in denying the defendant's pretrial motion for an evidentiary hearing on the motion for psychiatric examination and for a subpoena to compel the attendance of Dr. Cheatham to determine if his examination was fair and adequate.

On January 6, 1975, the defendant filed a petition for psychiatric examination which was overruled January 20, 1975. An oral motion to rehear was then made and denied that day and renewed and denied on the trial date, January 28, 1975. The defendant says he was denied due process of law based on TCA 33–708 and United States Supreme Court decisions.

■ Both Tennessee decisions and the federal constitution prohibit the trial of a defendant whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense. *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). See *Cogburn v. State,* supra. In *Drope* and *Pate* the court determined that the state statutes of Missouri and Illinois were constitutionally adequate but declined to hold they were constitutionally mandated. The court said the state statutes there jealously guarded the rights of the defendant in this regard.

■ TCA 33–708 (Evaluation of an accused believed incompetent to stand trial) protects these rights and says basically that when a person charged with crime is believed to be incompetent to stand trial the court, on its own motion, that of defense counsel or others, *may* order the defendant evaluated. The standard is one of "belief" and the judge has discretion as is indicated by the use of "may" in ordering an evaluation. (emphasis added)

The *Drope* court in discussing *Pate* noted that *Pate* did not prescribe a general standard with respect to the nature or quantum of evidence necessary to require resort to an adequate procedure. *Drope* said that evidence of a defendant's irrational behavior, his demeanor at trial and any prior medical opinion on competence are all relevant on the issue, but there are no fixed or immutable signs which indicate the need for further examination.

Under these standards the trial court did not err in denying the motion for a further examination. He had before him a recent report of a psychiatrist finding the defendant competent to stand trial along with a 1971 report to the same effect. Even Dr. Conroy's 1970 report on which the defendant relies says that the defendant was com-

petent to handle VA funds. In considering the motion, the trial judge also had before him the defendant's contentions based on Dr. Conroy's 1970 report that the defendant was schizophrenic, the motions and affidavits of his counsel, his service record, his 19 pending indictments and his apparent suicide attempts.

The *Drope* and *Pate* cases show extremely bizarre conduct of those defendants far surpassing that of Mackey.

Balancing all of the factors involved, the trial court correctly denied these motions.

■ Dr. Cheatham was firm in his view that the defendant was competent to stand trial. He did not waiver in his testimony, and we find no error in the court's failure to call him for examination before the trial. Nothing in his examination shows a violation of the defendant's right to due process of law.

In his testimony at the suppression hearing on the confession, the defendant clearly showed his knowledge of the offenses charged and his ability to assist his counsel in his defense. His conduct during the commission of the crime showed his knowledge of right from wrong and that he would be punished if he was caught. His flight afterwards supports the finding of the jury that he was legally sane.

■ The defendant complains of the denial of his motion for a continuance when Dr. Conroy could not attend because of his illness. He was a psychiatrist at the Veterans Hospital at Murfreesboro who examined Mackey in December 1970 and was under subpoena. In *Mackey v. State,* unreported, at Knoxville in June 1975, we considered and denied a similar contention as to this same expert. In that case Dr. Conroy was not under subpoena. The doctor's 1970 report did not indicate whether or not the defendant knew right from wrong and as before mentioned it found him competent to manage VA funds. In this case the defendant also sought to take Dr. Conroy's deposition. We do not think the trial judge abused his discretion in denying the motion for a continuance and that any error in denying the motion for a deposition was harmless.

■ The defendant offered the testimony of Emanuel Cranford, his former schoolteacher and coach, to the effect that he received a head injury in a football game in 1967, that he became a troublemaker afterwards and at times did not know right from wrong. Mr. Cranford was vague as to when he had last seen the defendant, placing it from two to five years before the trial. The state objected to this testimony as too remote and the trial judge excluded it. We do not think the defendant was prejudiced by the exclusion of this testimony.

■ The defendant challenges the admissibility of his confession. He testified that Georgia officers threatened to kill him and induced an involuntary confession to them, and that Chattanooga Officer Phillip Mann threatened him with a pistol when he and another officer came to Georgia to return him to Tennessee; that Officer Mann put the pistol on the desk threatening to use it if the defendant went against him; that a Georgia officer hit him with a blackjack and he then signed the confession that Officer Mann had written; that Officer Mann did not warn him of his rights until he was back in Chattanooga; that on the return trip Officer Mann told the defendant he (Mann) should stop the car and kill him.

Officer Mann testified that he advised Mackey of his rights in Georgia; that Mackey signed the waiver form and voluntarily confessed to the crimes; that he (Mann) did not threaten, force or coerce the defendant in any way and he knew of no improper conduct by the Georgia officers. He specifically denied putting the pistol on the table or threatening Mackey with it.

No Georgia officers testified. The defendant contends that his testimony as to their misconduct is unrebutted and that the court erred in failing to suppress his confession. After hearing the defendant and Officer Mann testify, the trial judge determined their credibility and found the confession to have been taken freely and in

compliance with *Miranda* admonitions. The evidence does not preponderate against his ruling and this assignment is overruled. *White v. State,* Tenn.Cr.App., 497 S.W.2d 751. Likewise without merit is the claim that the form of the waiver is insufficient under *Miranda.*

■ The defendant was indicted without having had a preliminary hearing. He complains that his attorney was appointed too late to demand a preliminary hearing. The law does not require that counsel be appointed to enable a defendant to demand a preliminary hearing. This assignment is overruled.

■ Edward Allen Hannah testified that Mrs. Cline ran from the house half naked, screaming she had been raped. Mr. Hannah described the defendant and his flight from the scene. He took the license number of the truck and described the defendant to police. On cross-examination the defendant inquired about a statement he made to a detective. Mr. Hannah said he did not sign a statement or see it. The court did not err in refusing further cross-examination on the statement or conversation with an unnamed detective.

■ The defendant complains that the court permitted hearsay testimony of Officer Mann to the effect that Mrs. Jane Clements, a neighbor of Mrs. Cline, identified the defendant from photographs.

The state did not introduce this evidence on direct examination. It was elicited by the defendant on cross-examination. In response to the defendant's inquiry, Officer Mann testified that Mrs. Clements said the defendant had been to her home, asked if he could trim her trees and she had called the power board. By this cross-examination, the defendant sought to show that the state failed to call Mrs. Clements as a witness because her testimony would be adverse to it. The defendant asked the officer if Mrs. Clements came by the police department and looked at photographs. The trial judge did not err by permitting the state to show by the officer that she then identified Mackey from the photo-

graphs. To hold otherwise would leave the jury with the impression that she had failed to identify him and that was the reason for her absence as a witness.

No assignment challenges the weight and sufficiency of the evidence. We are satisfied that the defendant has had a fair trial and that he was sane both at the time of the crimes and at the trial.

Judgments affirmed.

DUNCAN, J., and JAMES C. BEASLEY, Special Judge, concur.