# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 14, 2000 Session

## WILLIAM FLOYD v. STATE OF TENNESSEE

### Direct Appeal from the Circuit Court for Cannon County
### No. F99-17    J. S. Daniel, Judge

### No. M2000-00318-CCA-R3-CD - Filed December 28, 2000

William Floyd appeals the dismissal of his petition for post-conviction relief. In 1998, Floyd pled guilty to two counts of rape and, under the terms of his plea agreement, was sentenced to twenty years imprisonment. In his petition for post-conviction relief, Floyd contends that his guilty pleas are involuntary because on the date his pleas were entered he was under the influence of prescribed psychotropic drugs. The petition was dismissed by the post-conviction court and this appeal follows. Finding that the evidence in the record does not support Floyd's claim, we affirm the lower court's dismissal.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Dale W. Peterson, Woodbury, Tennessee, for the Appellant, William Floyd.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Russell S. Baldwin, Assistant Attorney General, William C. Whitesell, Jr., District Attorney General, and Dale L. Puckett, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Appellant, William Floyd, seeks post-conviction relief from his convictions for two counts of rape entered pursuant to guilty pleas in the Cannon County Circuit Court.[1] On appeal, he

---

[1]The Appellant was originally charged with four counts of sexual battery, ten counts of rape and ten counts of incest, arising from his admitted sexual conduct with his stepdaughter. In April 1998, pursuant to a negotiated plea agreement, the Appellant entered guilty pleas to two counts of rape for which he received two consecutive sentences of ten years. The agreement further provided that the remaining counts would be dismissed. The Appellant is currently confined at the Hardeman County Correctional Facility.

collaterally challenges his convictions upon grounds that the influence of prescribed psychotropic drugs caused him to enter uninformed, involuntary, and incompetent guilty pleas.[2]

After review of the record, we affirm.

## Proof at Post-Conviction Hearing

The Appellant filed the instant petition seeking post-conviction relief on April 19, 1999. On January 21, 2000, an evidentiary hearing was held in the Cannon County Circuit Court. During this hearing, the following proof was presented.

Lawrence Loveless, a registered nurse employed by the Cannon County Sheriff's Department, testified that he first encountered the Appellant on May 29, 1997, the date of the Appellant's arrest. On this date, Loveless received a report that the Appellant was sitting in his cell pulling his hair out. Emotionally, the Appellant was "distraught" and "uncommunicative." Additionally, Loveless was advised that, prior to his arrest, the Appellant had "overdosed on a combination of Xanax and Prozac."[3] As a result of the Appellant's behavior, the Appellant was referred to the Guidance Center for evaluation.

On August 1, 1997, the Guidance Center concluded that the Appellant was suffering from "major depression, recurrence, severe with psychotic features and access to antisocial personality." Based upon this diagnosis, the Appellant was prescribed Risperdal, Effexor, Paxil, Sinequan and Mellaril.[4] The Appellant's use of his medication was sporadic. He would often refuse to take the medication for "a week or two at a time." The Appellant's refusals to be medicated coincided with his scheduled court appearances. Additionally, due to the Appellant's complaints of urinary retention, the medications were often changed.

---

[2]The Appellant's alleged in his petition for post-conviction relief that he was denied the effective assistance of counsel in that counsel "failed to determine whether the psychothropic [sic] drugs petitioner was taking on the date he entered his guilty [pleas], had any effect on petitioner's ability to knowingly and without the full understanding of the consequences that would follow." This question obviously requires examination of the underlying question of whether psychotropic medication had any effect on petitioner's ability to enter informed and voluntary guilty pleas. This is the issue which we address in this appeal.

[3]Specifically, the jail daily log contained the following notation:
Inmate purportedly took a bottle of 36 Prosac [sic] from his wife from the home at 1 a.m. today, was taken into custody today at 12 noon. Mr. Floyd was acting fine until placed in the cell.

According to poison control, Prosac [sic], if he took all of them, it would be potentially fatal and that he needed sedating at 8:15. We gave him Librium 50 milligrams PO . . . .

There is some question as to whether he took the Prosac [sic] or is he acting? . . .

[4] Risperdal is an antipsychotic drug; Paxil is an antidepressant.

-2-

Gerald Melton, the Public Defender for the Sixteenth Judicial District, testified that he was appointed to represent the Appellant on the indicted charges. Mr. Melton stated that nothing in his notes made during his representation of the Appellant reflected that the Appellant did not understand what was going on. During one conversation, however, counsel recalled that the Appellant advised him that "he had been on different medications at some point in time." Mr. Melton admitted that he never asked jail personnel whether the Appellant was in fact taking any medication. Concerned, however, about the Appellant's behavior at the time of his arrest and the Appellant's self-reports, Mr. Melton obtained an order to have the Appellant evaluated regarding his competency to stand trial. In February 1998, the Appellant was evaluated at the Guidance Center. The evaluation revealed that the Appellant was competent to stand trial, that he could understand the nature of the charges and the relative roles of those who would participate in the case, and that the defense of insanity could not be supported. Moreover, counsel had no indication during his conferences with the Appellant that the Appellant's competency was in question. Indeed, during conferences with counsel, the Appellant clearly recited the facts regarding his charges in a consistent manner. The Appellant's recitation of the facts never altered. The Appellant indicated that he understood the nature of the charges against him and the penalties that he might receive. Moreover, the Appellant actively participated in the negotiation process regarding plea offers with the State.[5] Mr. Melton concluded that "[he] never had any reason to doubt [the Appellant's] ability to assist me in his representation."

Tom Woodson, a pharmacist, testified as an expert on behalf of the Appellant regarding the use of drugs and their effects on the human body. Mr. Woodson explained that Paroxetine, also known as Paxil, is "an antidepressant used to treat depression, obsessive compulsive disorder and panic disorder." Paroxetine "would actually free up serotonin in the body. Serotonin works as a mediator of sleep, helps in sensory perception, and actually promotes an overall feeling of well-being in a person." Mr. Woodson further stated that someone under the prescription of Paroxetine "may experience excitability or sedation." An individual sporadically using Paroxetine "would not receive the optimal effect of the drug and would probably lapse back in the baseline." The purpose behind the drug is to "enhance the feeling of well-being in the patient." Risperidone is used as an anti-psychotic to treat the symptoms of schizophrenia. Like Paroxetine, this drug also "works to enhance a person's sense of well being and should be taken on a regular basis." Mr. Woodson explained that "extensive use of Risperidone could result in symptoms similar to those occurring in patients with Parkinson's Disease." Woodson testified that Paroxetine and Risperidone were commonly taken simultaneously and that a person taking both prescriptions "could appear to be a normal thinking person but could really not know what was going on."

---

[5]To illustrate the Appellant's level of participation, counsel stated that the:
> original offer in this case was an offer of 40 years that was rejected by Mr. Floyd. An offer of 30 years was rejected by Mr. Floyd. Then there was this conversation of an offer of maybe 24 years that was rejected by Mr. Floyd. The counter-offers that I had made in between were rejected by the State until we reached the point in April of 1998 that the State was considering making us a new offer between 20 and 24 years. An offer of 20 years was accepted.

The written statement of Esther Lack, Chief Jailer for Cannon County, was admitted into evidence by stipulation. Ms. Lack's statement provided that, during the Appellant's period of confinement, she observed what she considered as unusual behavior, specifically that the Appellant talked to himself, that he talked to his dead mother, that he pulled out his hair, and generally, she was of the opinion, that "he had gone off the deep end."

The Appellant, regarding his overall health in 1997-1998, testified that he was "in pretty bad shape because [he didn't] remember." The Appellant explained that because he was on medication during this period of time he could not recall meeting with defense counsel. Although he could not enumerate the specific medications that he was prescribed, he testified that the medication resulted in his loss of memory. In fact, the Appellant maintained that he could not recall any specifics concerning the preparation of his case and his resulting guilty pleas. The Appellant stated, "I would like the opportunity to start over where I'm aware of what's going on and be able to make a rational decision about my life." In response to questioning by the court, the Appellant admitted that, within the three-day period prior to his arrest, he ingested "Xanax, I had a hit of blotter, hit of microdot, I took it." He also conceded that he had ingested a bottle of pills which he had taken from his wife, although he did not know what they were. The Appellant stated that, after taking the pills, he did not know where he was until he "woke up strapped down" at the Mental Health Center in Nashville. He recalled that this was shortly after his arrest. The Appellant stated that he had only vague recollections of the year spent in confinement prior to his guilty plea.

In denying the Appellant relief, the post-conviction court found in its written order: Mr. Floyd's assertion that his plea was involuntary because of the medication that he was taking is also dismissed. The Petitioner in a Post Conviction Relief Petition has the burden of establishing his assertions by clear and convincing evidence. This is not done by Mr. Floyd. The only proof that Mr. Floyd advances is that he does not remember the events up to the plea. The record and evidence show that a mental evaluation was completed February 3, 1998, and that the plea was entered on April 28, 1998. The report of the mental evaluation . . . determined that the Defendant was "capable of defending himself in a court of law and that he understands the charges pending against him and the consequences of those charges." This report further advises that the Defendant "can advise and participate in his own defense." The medical records of the Cannon County Jail . . . evidence that upon Mr. Floyd's arrest in May of 1997, that he exhibited certain antisocial behavior which was explained by his arrest on these serious charges and his admitted overdosage of prescription drugs shortly before that arrest. This record demonstrates that some dosages of Paroxetine and Risperidone were provided to the Defendant at the jail in May 1997. Mr. Floyd may have received these medications from time to time over the next eleven months that he remained incarcerated in the Cannon County Jail prior to his plea but no record demonstrates these medications in the month of April 1998 when the plea was entered. The Court transcript of the entry of the plea . . . demonstrates the dialogue that occurred between the Defendant and the Court. This dialogue exhibits a person

who is fully informed of the charges, his rights and one who knowingly, intelligently and voluntarily had waived those rights in exchange for this plea agreement.

## Analysis

In post-conviction proceedings, the Appellant must prove the allegations contained in the petition by clear and convincing evidence. TENN. CODE ANN. § 40-30-210(f) (1997). Moreover, the findings of fact of a trial court have the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against its judgment. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Questions concerning credibility of witnesses and the weight and value to be given their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

Guided by these considerations, we acknowledge that to satisfy constitutional standards of due process, a guilty plea must be entered knowingly, intelligently and voluntarily. Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court held, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). This includes the accused's understanding of the rights and circumstances involved and whether the accused, understanding his or her rights, nonetheless, opts to waive or relinquish those rights. State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). In making this determination, the reviewing court must look to the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995), perm. to appeal denied, (Tenn. 1996); see also Chamberlain v. State, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990), perm. to appeal denied, (Tenn. 1991). Of particular import are the defendant's demeanor and the dialogue between the court and the defendant during the plea hearing. See generally Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

It is well-established that a plea taken while a defendant is incompetent violates due process of law. See generally Godinez v. Moran, 509 U.S. 394, 396, 113 S. Ct. 2680, 2685 (1993) (defendant may not plead guilty unless entered competently). A defendant is incompetent to stand trial if he lacks sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or he lacks a rational and factual understanding of the proceedings against him. See State v. Blackstock, 19 S.W.3d 200, 205 (Tenn. 2000) (citing State v. Black, 815 S.W.2d 166, 174 (Tenn.1991) (quoting Mackey v. State, 537 S.W.2d 704, 707 (Tenn. Crim. App.1975)); see also Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 789 (1960) (ability to consult with lawyer and a "rational as well as factual understanding of the proceedings")). However, a defendant's use or non-use of psychotropic drugs does not mean that the plea was not knowingly, intelligently, and voluntarily entered. The important aspect of the taking of a plea, irrespective of whether a defendant is on medication, is whether the defendant was capable of entering a plea in accordance with his careful consideration of the plea, his knowing and intelligent waiver of his

-5-

rights, and with full knowledge of the consequences of his voluntary plea and waiver of rights. <u>See generally</u> Tenn. R. Crim. P. 11.

The record supports the findings and conclusions of the post-conviction court. Indeed, the transcript of the guilty plea hearing reveals:

(1) the Appellant exhibited no unusual behavior;

(2) the Appellant indicated a comprehension of the rights about to be relinquished and of the nature and consequences of the charged offenses;

(3) the Appellant responded intelligently to the questions posed by the court; and

(4) the Appellant acted rationally and informed.

The Appellant's responses to the plea colloquy were entirely responsive, appropriate, intelligent, and in this court's opinion, made in a knowing, willing and voluntary manner. The record does not reflect that the Appellant was suffering from any adverse effects, such as confusion, resulting from the ingestion of or failure to ingest prescribed medications. Although the record does indicate that the Appellant suffered from some psychotic symptoms and was prescribed several psychotropic medications for his condition, there is no indication that on the date his pleas were entered the medications or lack thereof had any effect on his cognitive abilities. Moreover, at the guilty plea hearing, the Appellant did not exhibit any behavior that would have placed the trial court, defense counsel, or the State on notice that the Appellant was not competent or that his plea was not made knowingly and voluntarily. In fact, there is no evidence before us that supports a finding that the Appellant was laboring under a disability of any kind during the guilty plea hearing.[6]

Based upon the foregoing, we conclude that the Appellant has failed to carry his burden of establishing his claims. Moreover, we cannot conclude that the evidence preponderates against the post-conviction court's findings of fact. As such, we find no error of law mandating reversal of the court's judgment. Accordingly, we affirm.

---

[6] <u>See, e.g.</u>, <u>State v. Jayson Soriano</u>, No. M1999-00999-CCA-R3-PC (Tenn. Crim. App. at Nashville, June 30, 2000) (guilty plea competently entered despite defendant's claim of incompetency due to failure to take medication); <u>Lawrence Strickland v. State</u>, No. E1999-00119-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Apr. 12, 2000) (guilty plea knowingly entered despite defendant's claim that he was under influence of medication); <u>John D. Barron v. State</u>, No. M1998-00031-CCA-R3-PC (Tenn. Crim. App. at Nashville, Dec. 29, 1999) (guilty plea competently entered despite defendant's claim of incompetency due to failure to take medication); <u>Samuel D. Curry v. State</u>, No. 02C01-9508-CR-00219 (Tenn. Crim. App. at Jackson, May 24, 1996), <u>perm. to appeal dismissed</u>, (Tenn. Jun. 28, 1999) (transcript of guilty plea hearing confirmed court's conclusion that plea was competently entered despite defendant's allegation that nurse administered overdose of medication).

_____

DAVID G. HAYES, JUDGE