# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 5, 2000

## STATE OF TENNESSEE v. JOHN E. PARNELL

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 96-12806 and 96-12807    Joseph B. Brown, Jr., Judge**

---

**No. W1999-00562-CCA-R3-CD - Filed February 6, 2001**

---

The defendant was convicted by a Shelby County jury of criminally negligent homicide and aggravated child abuse. The trial court sentenced him to concurrent sentences of two years for the homicide charge and twenty years for the aggravated child abuse charge. In this appeal as a matter of right, the defendant alleges (1) he was incompetent to stand trial, and (2) the evidence was insufficient to sustain the guilty verdict for aggravated child abuse. The defendant was indicted in count one for aggravated child abuse by treating the child in a manner so as to inflict injury; the defendant was indicted in count two for aggravated child abuse by neglecting the child so as to adversely affect his health and welfare; the jury was instructed to consider count two only if the defendant was found not guilty of count one; the jury found guilt only as to count one; the jury never returned a verdict on count two; and the evidence is insufficient to sustain the verdict under count one. Although the evidence overwhelmingly establishes guilt of aggravated child abuse by neglect as alleged in count two, the jury's failure to return a verdict on this count requires a remand for retrial on count two. We affirm the conviction for criminally negligent homicide.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part;**
**Reversed in Part; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Glenn I. Wright, Memphis, Tennessee, for the appellant, John E. Parnell.

Paul G. Summers, Attorney General and Reporter; Lucian D. Geise, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer Nichols, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant received an effective sentence of 20 years for aggravated child abuse and criminally negligent homicide. In this appeal, the defendant claims he was incompetent to stand trial, and the evidence was insufficient to sustain the conviction for aggravated child abuse. We reverse the defendant's conviction for aggravated child abuse by "treatment" and remand for a new trial on aggravated child abuse by "neglect." The conviction for criminally negligent homicide is affirmed.

**I. FACTS**

The defendant met Anna Robertson in 1991 or 1992.[1] The defendant pursued Robertson romantically, although he was in his thirties and aware that Robertson had a mental disability and was a minor in high school. Robertson resided with her grandmother, and her two aunts lived on the same street; therefore, she was adequately supervised. The defendant asked Robertson's grandmother for permission to marry her, but her grandmother refused permission until Robertson graduated from high school. Robertson resided with her family until she and her two sons by the defendant moved into the defendant's apartment in August of 1995.

On Friday, February 16, 1996, the defendant returned home from work at approximately 1:00 a.m. and Robertson met him at the door. She informed him that their twenty-month-old son, Andre, was "sick." The defendant immediately examined the victim and concluded that the victim was deceased.

Officer Stanley Johnson testified that upon entering the defendant's apartment, he noticed that the deceased child appeared malnourished. The defendant and Robertson were taken into custody, informed of their <u>Miranda</u> rights, and the defendant gave a statement to Officer Donna Marie Roach.

Officer Roach testified that the defendant, when asked if he knew how the victim died, answered, "probably malnutrition." The defendant also stated that he last saw the victim alive on Thursday, February 15, 1996, between 10:30 a.m and 3:00 p.m., when he tickled the victim's foot before leaving for work. The defendant said the victim was wrapped in his blanket in his normal sleeping area located on the floor. The defendant further stated that the last time he saw the victim eat was on Wednesday, February 14, 1996, when he fed the victim. The defendant stated that the victim appeared undernourished on prior occasions because Robertson failed to feed him; however, he was unaware that the victim was not being fed on this occasion.

---

[1] Anna Robertson, the victim's mother and co-occupant of the defendant's residence, was jointly indicted with the defendant. Her case was severed from the defendant's case. Although it does not appear in this record, defense counsel alleges in his brief that Anna Robertson was found not guilty by reason of insanity in a separate proceeding.

Barbara Thomas, Anna Robertson's aunt, testified that she assisted in the care of Robertson and her two children. She further stated that although the victim was diagnosed with a birth defect, she assisted in his feeding, and he ate well and comprised a healthy weight before Robertson removed him from their household.

After the victim's death, Thomas went to the defendant's apartment. She stated that she saw no baby clothes. She also remarked that she saw two large rats scurry into hiding, and the apartment was filthy. On cross-examination, she said that she called DHS to report Robertson while Robertson was living in her family's neighborhood, because Robertson would not properly feed the victim and would fail to adequately change his diaper.

Francie Foster, Robertson's grandmother, testified that when Robertson moved from her home, she left her WIC vouchers. Neither Robertson nor the defendant returned to request them.

Dr. Jerry Francisco performed the autopsy on the victim. The victim had various abrasions and suffered from severe malnutrition and dehydration. The victim was 76 centimeters in height and weighed only 16 pounds. His height was below normal, and his weight was so low that it was off the weight-scale chart. Dr. Francisco further testified that the abrasions on the victim's face were consistent with rodent bites. Internally, the victim suffered from edema of the kidneys - a characteristic of malnutrition; fat in his liver - indicating his body was burning his own fat in an attempt to sustain itself; cerebral atrophy of his brain - a birth defect; and lack of food in his stomach. Dr. Francisco opined that the victim died of malnutrition, and his birth defect did not contribute to his death. Furthermore, Dr. Francisco testified that if the victim had been fed by the defendant on the day before his death as the defendant claimed in his statement, then the victim would have survived.

During cross-examination, Dr. Francisco admitted that his autopsy report indicated the cause of death was "Malnutrition and Internal Hydrocephalus." He further stated that Internal Hydrocephalus is a birth defect, and it may or may not get progressively worse over one's life. Additionally, Dr. Francisco testified that he wrote on March 15, 1996, "[d]eath was the result of failure to thrive. This was associated with central nervous system disease that appears to have been present at birth." Dr. Francisco explained that, although in 1996 he believed that the victim's birth defect was a factor in his death, he discounted that conclusion after examination of several photographs of the victim.

A photograph of the victim taken prior to Robertson's departure from her family's home was admitted, and it showed a well-fed nine-month-old baby on March 21, 1995. At thirteen months, the victim weighed 20 pounds and two ounces. At the time of death seven months later, the victim weighed only 16 pounds. From an examination of the photographs and the victim's weight history, Dr. Francisco opined that the victim did not suffer from anorexia or any condition associated with his birth defect, and the victim's death was caused solely by severe malnutrition.

The defendant offered the testimony of his employer, Harold Houston Payne. Payne testified concerning the defendant's time records and work activity prior to the victim's death. For six weeks prior to the victim's death, the defendant worked 53.4, 53.0, 56.7, 52.3, 45.9, and 57.6 hours per week. Perry further testified that the defendant requested as much overtime as possible.

The defendant testified in his defense. He claimed that when Robertson and their two children moved in his apartment, the victim was "skinny but not frail." He said that he was working as much as possible so they could move closer to Robertson's family. Furthermore, the defendant stated that there was always food in the house, and he bought groceries weekly or twice-weekly. He knew that Robertson failed to feed the victim on previous occasions and instructed her to feed him on those occasions, but failed to notice that the victim was malnourished on this occasion. He attributed the victim's "frailty" to his birth defect.

On cross-examination, the defendant admitted that the blanket on which the victim slept was "nasty," and he never took the victim to the doctor. He further explained that he failed to notice the victim's severe malnutrition because it was dark inside the apartment. Additionally, the defendant stated that he was unsure how long the victim lay deceased on the floor, and he testified that the victim could have been deceased for a period of days.

The jury found the defendant guilty of aggravated child abuse by treating the victim in a manner so as to inflict injury, as alleged in count one of the indictment. Pursuant to the jury instructions, the jury did not render a verdict as to count two, charging aggravated child abuse by neglect. The jury also found the defendant guilty of criminally negligent homicide.


## II. COMPETENCY

The defendant argues that he was incompetent to stand trial. We disagree.

The Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Tennessee Constitution prohibit the trial of a person who is mentally incompetent. Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966); Berndt v. State, 733 S.W.2d 119 (Tenn. Crim. App. 1987). Furthermore, our supreme court has noted,

> the standard for determining competency to stand trial is whether the accused has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense." State v. Black, 815 S.W.2d 166, 174 (Tenn.1991) (quoting Mackey v. State, 537 S.W.2d 704, 707 (Tenn. Crim. App. 1975)); *see also* Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 789, 4 L. Ed. 2d 824 (1960) (ability to consult with lawyer and a "rational as well as factual understanding of the proceedings").

State v. Blackstock, 19 S.W.3d 200, 205 (Tenn. 2000).

The defendant underwent psychological evaluations twice prior to his scheduled trial date and was found to be competent each time. On the trial date, defense counsel again sought a psychological evaluation claiming that the defendant's mental condition had further deteriorated. The trial court ordered Dr. Lynne Zager, who had previously examined the defendant, to reevaluate the defendant and report her conclusions at a hearing the following morning. Dr. Zager complied and found that the defendant understood the nature of the legal process, the charges against him, and the consequences of the proceedings; was able to confer with counsel; could focus on and recall the facts; and could listen to and properly assess testimony. However, she stated that she had some concern about his ability to "participate." Dr. Zager qualified her statement saying that the defendant was of the opinion, which could be delusional, that he was the victim of a conspiracy. Dr. Zager did not state that the defendant was, in fact, delusional. Regardless, she acknowledged that even a delusional person could be competent to stand trial. Based upon the record, the trial court found the defendant competent to stand trial.

After a thorough review of Dr. Zager's testimony, we conclude the record supports the ruling of the trial court; namely, the defendant had the capacity to understand the nature and object of the proceedings, consult with counsel, and assist in preparation of his defense. Accordingly, the defendant was competent to stand trial. This issue is without merit.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant does not challenge his conviction for criminally negligent homicide, and we conclude the evidence was sufficient to sustain this conviction. However, defendant contends the evidence was insufficient to establish guilt of aggravated child abuse by treating the child in such a manner as to inflict injury. For reasons not advanced by the defendant, we conclude the evidence was indeed insufficient to support the jury's guilty verdict for this offense.

### A. Standard of Review

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979). We do not reweigh or reevaluate the evidence and are required to afford the state the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). It is the defendant's burden to show this court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

**B. Indictment**

The grand jury returned a two-count indictment in No. 12806, both of which charged aggravated child abuse. Count one alleged the defendant

> ... did knowingly, other than by accidental means, treat ANDRE ROBERTSON, a child six (6) years of age or less, in such manner as to inflict injury to the said child, such act resulting in serious bodily injury to the said child . . .

Count two alleged the defendant

> . . . did knowingly, other than by accidental means, neglect ANDRE ROBERTSON, a child six (6) years of age or less, so as to adversely affect the health and welfare of the said child, such act resulting in serious bodily injury to the said child . . .

**C. Jury Instructions**

The trial court instructed the jury to first consider the charge of aggravated child abuse as charged in count one **(**treating the child in such manner as to inflict injury). The instructions further provided that if the jury found defendant not guilty of count one, only then should the jury consider aggravated child abuse as charged in count two (neglect). The instructions further expressly provided that the defendant could be convicted of only one count of the indictment.

**D. Jury Verdict**

After deliberations, the jury's verdict was announced as follows: "We, the jury, find the defendant guilty of aggravated child abuse as charged in the first count of the indictment." In view of this verdict and in accordance with the jury instructions, the jury announced no verdict with respect to count two (aggravated child abuse by neglect). As a result, the only verdict returned by the jury was guilty of aggravated child abuse by treating the child in such manner as to inflict injury.

**E. Applicable Statutes**

The statutes in effect at the time of the offense provided in pertinent part as follows:

> **Child abuse and neglect.** – (a) Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare is guilty of a Class A misdemeanor; provided, that if the abused child is six (6) years of age or less, the penalty is a Class D felony.

Tenn. Code Ann. § 39-15-401 (Supp. 1995).

> **Aggravated child abuse.** – (a) A person is guilty of the offense of aggravated child abuse who commits the offense of child abuse as defined in § 39-15-401 and:
>> (1) The act of abuse results in serious bodily injury to the child; or
>> (2) A deadly weapon is used to accomplish the act of abuse.
>> (b) A violation of this section is a Class B felony; provided, that, if the abused child is six (6) years of age or less, the penalty is a Class A felony.

Tenn. Code Ann. § 39-15-402 (Supp. 1995).

## F. Analysis

It is apparent that a violation of Tenn. Code Ann. § 39-15-401, child abuse and neglect, may be established in two separate ways – "by either inflicting injury upon or neglecting a child." State v. Hodges, 7 S.W.3d 609, 622 (Tenn. Crim. App. 1998). Tenn. Code Ann. § 39-15-401 creates one crime which can be committed by two different courses of action, not two separate crimes. *Id*. Likewise, aggravated child abuse is established by either of these two methods, plus serious bodily injury to the child. Tenn. Code Ann. § 39-15-402(a)(1) (Supp. 1995); State v. Ducker, 27 S.W.3d 889, 895-96 (Tenn. 2000); Hodges, 7 S.W.3d at 622-23.

In view of the two-count indictment and guilty verdict only as to count one, we must determine whether the evidence was sufficient to establish that the defendant "treated" the child in such a manner as to inflict injury, as opposed to whether the defendant "neglected" the child so as to adversely affect the child's health.

The word "treat" is not defined by the Code. "Treat" is defined in the dictionary as "to act or behave toward (a person) in some specified way." **Websters New Universal Unabridged Dictionary** 2015 (1996). "Neglect," on the other hand, is a failure to take action. In interpreting the words "abused" and "neglected" relating to nursing homes, the Tennessee Court of Appeals stated, "[t]he word, 'abuse,' implies an overt active deed. . . On the other hand, neglect is the failure to perform a deed. . ." Claiborne & Hughes Conval. v. State, 881 S.W.2d 671, 677 (Tenn. App. 1994).

We conclude the legislature intended that the "treatment" provision of the child abuse statute refer to physical abuse by an act or acts that inflict injury, and the "neglect" provision of the child abuse statute refer to the failure to take appropriate action.

Viewing the evidence in a light most favorable to the state, the evidence is insufficient to establish guilt under the "treatment" provision of the child abuse statute. The state's proof established that the child died from severe malnutrition. As to the physical injuries observed on the

child, there is no indication, nor was it the state's theory, that these injuries were inflicted by the defendant, or the child's mother, or any other person. Instead, the evidence revealed that these horrifying injuries were consistent with rodent bites.

In summary, the evidence reveals a classic case of "neglect" which ultimately and tragically led to the child's death. Although the evidence overwhelmingly supports aggravated child abuse by neglect as alleged in count two of the indictment, the jury was not authorized to consider that charge. Pursuant to the jury instructions, the guilty finding under count one precluded any consideration of count two. We are without the authority to make or affirm a finding of guilt on count two since the jury returned no verdict on that count.

### G. Remand

Although we reverse the conviction under count one of the indictment, we remand for a new trial on count two charging aggravated child abuse by neglect. The jury never returned a verdict as to this offense, and double jeopardy does not bar a retrial for this offense. *See* State v. Madkins, 989 S.W.2d 697, 699 (Tenn. 1999); State v. Burns, 979 S.W.2d 276, 279 n.2, 292-93 (Tenn. 1998).

### H. Alternative Theories of Criminal Liability

Many offenses may be committed in various ways. Where there are separate counts in an indictment charging the same offense but by different means, the better practice is to submit all counts to the jury. In the event the jury returns a verdict of guilty on more than one count, the proper remedy is to merge the counts into a single conviction for the offense. *See* State v. Cribbs, 967 S.W.2d 773, 788 (Tenn. 1998) (suggesting trial courts secure verdicts on both premeditated murder and felony murder, which can then be merged if there is a conviction for both). Had this been done in this case, a remand for new trial would have been unnecessary, assuming the jury would also have found guilt under count two.

### CONCLUSION

We affirm the judgment of the trial court with regard to the conviction for criminally negligent homicide in indictment no. 12807. We reverse the judgment of the trial court with regard to the conviction for aggravated child abuse in count one in indictment no. 12806, but remand for a new trial with regard to count two of that indictment.

_____
JOE G. RILEY, JUDGE