IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 3, 2002

## STATE OF TENNESSEE v. KENNETH KING

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-13465     Chris Craft, Judge**

---

**No. W2002-00938-CCA-R3-CD - Filed January 29, 2003**

---

Defendant, Kenneth King, was convicted of burglary of a building and was sentenced to twelve years in the Tennessee Department of Correction as a career offender. Defendant now appeals his conviction alleging that the trial court erred in refusing to grant a mental evaluation prior to trial to determine Defendant's competency to stand trial. After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Robert Wilson Jones, Shelby County Public Defender; W. Mark Ward, Assistant Public Defender; Michael Johnson, Assistant Public Defender; and Brent Walker, Assistant Public Defender, Memphis, Tennessee, for the appellant, Kenneth King.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

When Walter Harrison glanced out his back door, he saw Defendant come out of Mr. Harrison's garage carrying his leaf blower and chain saw. After Defendant left his yard, Mr. Harrison followed him in his van and called 911 to report the burglary. As he drove, Mr. Harrison updated the dispatcher on Defendant's route. Eventually, Defendant arrived at a wooded ravine and went down an embankment toward the railroad tracks. Unable to follow Defendant any further, Mr. Harrison got out of his van and yelled at Defendant to put down the leaf blower and chain saw. Defendant appeared startled to see Mr. Harrison and ran down the ravine. When the police arrived a few minutes later, they pursued Defendant out of the ravine and through the surrounding neighborhood. Eventually, a plainclothes officer was able to intercept and restrain Defendant.

Defendant was indicted for burglary, a class D felony, and his case was set for trial on October 30, 2001. *See* Tenn. Code Ann. § 39-14-402. Because Defendant had seven prior class E felony convictions, he faced a sentence of twelve years as a career offender. On the morning of the trial date, counsel informed the trial court that the parties had agreed to a negotiated plea agreement whereby Defendant would plead guilty to burglary and serve a sentence of eight years as a Range III offender. During the guilty plea submission hearing, Defendant told the trial court that he agreed to serve his sentence in the Shelby County jail rather than the state penitentiary in exchange for his guilty plea. The trial court explained that it had no jurisdiction to sentence Defendant to jail without the Shelby County sheriff's agreement. At this point, the colloquy between the trial court and Defendant disintegrated. Once Defendant learned his plea agreement did not include an agreement as to where Defendant would serve his sentence, he either refused to answer the trial court's questions or said that he did not understand any of the proceedings. The trial court then rejected Defendant's guilty plea because the Defendant did not convince the court that his plea was knowing and voluntary. *See* Tenn. R. Crim. P. 11(e)(4). Defendant's trial was ordered to proceed.

Before the trial began, Defendant told the trial court he was dissatisfied with his counsel's representation although he did not identify any particular area of complaint. After examining Defendant about his request for a new attorney, the trial court concluded:

> And I find this, Mr. Johnson, unless you have any other questions, I find that Mr. King has a big problem. His problem is he does not want to plead guilty and take the eight years that the state offered him. On the other hand, he doesn't want to go to trial and be sentenced to twelve years. But those are the only two options that he has and so what he is doing is saying I don't understand. But I find that Mr. King does understand. He knows what is going on. But what he is trying to do is avoid disposing of his case.

Defendant's trial then began, but during the State's opening statement, Defendant raised his hand, groaned loudly and began to talk. The trial court sent the jury out of the courtroom. During the recess, Defendant repeated that he did not understand anything that was going on, that he wanted to talk to someone other than his lawyer and that he did not want to be in the courtroom while the trial was going on. As a result of Defendant's continued disruptions, his counsel moved for a continuance so that a mental evaluation might be conducted. The trial court denied Defendant's motion, but informed Defendant that he could request a mental examination after the trial and before sentencing.

For most of the trial, Defendant sat sideways with his face turned away from the witnesses. When the victim attempted to identify Defendant as the perpetrator, the trial court had to instruct Defendant to turn around so the victim could see his face. At the conclusion of the State's proof, Defendant's counsel and the trial court questioned Defendant about his decision not to testify, but, once again, Defendant either answered negatively, denied that he understood the trial court's questions or said that he did not want to take part in the trial. At the conclusion of the voir dire, the

trial court found that Defendant understood his right not to testify, and voluntarily declined to take the stand because he did not want to participate in the trial.

Based on the evidence presented at trial, the jury found Defendant guilty of burglary. Following the jury's verdict, the trial court entered an order directing a mental evaluation of Defendant prior to sentencing. The Midtown Mental Health Center reported on November 27, however, that Defendant refused to cooperate in his evaluation. After another attempt to evaluate Defendant, the Center found that Defendant's competency was questionable on December 6 and recommended that Defendant be transferred to the Memphis Mental Health Institute for further evaluation.

Defendant's sentencing hearing took place on December 12, 2001, and the trial court sentenced Defendant to twelve years imprisonment as a career offender. On February 28, 2002, the Memphis Mental Health Institute determined that Defendant was competent.

At the hearing on Defendant's motion for a new trial on March 12, 2002, Defendant argued that although he was found competent in February, he was not competent some four months earlier when he was tried. The trial court denied Defendant's motion for a new trial, concluding that Defendant was competent at the time of his trial.

Defendant appeals his conviction alleging that the trial court erred in denying his motion for a mental evaluation prior to trial to determine if Defendant was competent to stand trial. Defendant contends that his bizarre and erratic behavior during trial raised sufficient doubt as to his mental stability to require the trial court to order a competency hearing. Further, Defendant argues that a finding of competency four months after the trial is not determinative of Defendant's competency at the time the trial was conducted.

Requiring an accused to plead to an offense or stand trial while insane or mentally incompetent violates the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution. *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 36, 15 L. Ed. 2d 815 (1966); *State v. Blackstock*, 19 S.W.3d 200 (Tenn. 2000). When there is a question about a defendant's competency to stand trial, the trial court, on its own motion or upon the request of the district attorney general or defense counsel, may order the defendant's mental evaluation after a hearing. Tenn. Code Ann. § 33-7-301(a)(1); *see Berndt v. State*, 733 S.W.2d 119, 122 (Tenn. Crim. App.) *perm. to appeal dismissed* (Tenn. 1987). A defendant is competent to stand trial if he or she has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense." *Mackey v. State*, 537 S.W.2d 704, 707 (Tenn. Crim. App. 1975), *cert. denied* (Tenn. 1976). In determining whether a trial court should have *sua sponte* ordered a competency hearing, "an appellate court may only consider those facts which were before the court when the trial commenced or the pleas were entered." *Berndt*, 733 S.W.2d at 122. The standard of review is "'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to [a defendant's] competency to stand trial'" or enter a plea of guilty. *Id. (quoting Pate v. Smith*, 637

F.2d 1068, 1072 (6th Cir. 1981). The burden is on the defendant to prove his incompetency by a preponderance of the evidence, and the trial court's findings are conclusive on appeal unless the evidence preponderates otherwise. *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App.), *perm. to appeal denied* (Tenn. 1991).

In determining whether a competency hearing is required, the trial court may consider the defendant's behavior and demeanor at trial as well as any prior medical opinion on competency. *Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 908, 43 L. Ed. 2d 103 (1975). Defendant did not offer any evidence of incompetency other than his behavior at trial. When the trial court asked Defendant about his educational background, Defendant replied that he had completed the fifth grade and had no problem reading. Nothing in the pre-sentence report indicates that Defendant has had a past history of mental illness other than Defendant's statement that he "had been beat in the head" when he was a child. Defendant also admitted that he used cocaine and alcohol, but his drug use ceased when he was incarcerated.

Defendant's argument that he was incompetent at the time of trial rests solely with his behavior in court. A review of the record indicates that Defendant apparently thought that he was going to be permitted to remain in the Shelby County jail if he pleaded guilty instead of serving his sentence with the Tennessee Department of Correction. Until the trial court informed him that this was not the case, Defendant answered the questions posed to him. When he learned the trial court had no jurisdiction to sentence him to the county jail, however, Defendant refused to cooperate in any phase of the proceedings. From that point on, Defendant either denied that he understood what was going on or he refused to answer the trial court's questions in a meaningful way. The trial court was in the best position to observe Defendant's demeanor and behavior during his trial. Based on these observations, the trial court concluded that Defendant was malingering and capable of understanding, and did understand, the proceedings. Defendant is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-4-