# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 25, 2014

## STATE OF TENNESSEE v. LAYTHANIEL HANEY, JR.

**Appeal from the Criminal Court for Cocke County**
**No. 3034   Ben W. Hooper, II, Judge**

---

**No. E2013-01302-CCA-R3-CD - Filed March 26, 2014**

---

The Defendant, Laythaniel Haney, Jr., was convicted by a Cocke County Criminal Court jury of the delivery of a controlled substance and received a fifteen-year sentence as a career offender.  In this delayed appeal, he contends that the trial court erred by finding that 1) he was not prejudiced by jurors' falling asleep during the trial and 2) he was not prejudiced by his being under the influence of drugs at the trial.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

James R. Hickman, Jr., Sevierville, Tennessee, for the appellant, Laythaniel Haney, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulaney Faugh, Assistant Attorney General; James Dunn, District Attorney General; and William Brownlow Marsh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from the Defendant's delivering cocaine to an undercover police officer and a confidential informant.  Upon conviction, the Defendant filed a motion for a new trial one day after the thirty-day deadline pursuant to Tennessee Appellate Procedure Rule 33(b).  In the first appeal of the Defendant's conviction, this court waived the issues related to the sleeping jurors and his alleged intoxication during the trial but considered issues related to the sufficiency of the evidence, inconsistent verdicts, and merger.  Later, he was granted this delayed appeal.

In the first appeal of the Defendant's conviction, this court affirmed his conviction and summarized the facts of the case as follows:

These charges stem from an undercover drug operation in which Officer Neal Seals, who at the time of the transaction was working for the Sevierville Police Department Drug Task Force, and a confidential informant, Dawn Hicks, purchased cocaine from the Defendant. Most of the events of the day and the entire transaction between the Defendant and Ms. Hicks were recorded on a digital recording device.

On November 28, 2006, Officer Seals and Ms. Hicks met the Defendant at an Exxon gas station where the Defendant got into their car. The Defendant began directing them to a house in Cocke County so that they could purchase one hundred dollars worth of crack cocaine for the Defendant. As Ms. Hicks was driving, the Defendant "began smoking crack cocaine in the back seat" of the vehicle. The Defendant then offered some of his crack cocaine to Officer Seals, who declined the invitation and said, "Naw, I don't do that." Ms. Hicks told the Defendant that Officer Seals was purchasing the crack for his "old lady." After Officer Seals refused to smoke the cocaine, the Defendant "kind of got quiet and didn't say too much more after that."

When they arrived at the house, Ms. Hicks got out of the vehicle and talked with the Defendant. The conversation between Ms. Hicks and the Defendant was not recorded because Officer Seals had the recording device with him in the car. According to Ms. Hicks, the Defendant told her that "he didn't want to have nothing to do with [Officer Seals]. He'd deal with me but not [Officer Seals]." Eventually, Ms. Hicks gave the Defendant the one hundred dollars that was given to her by Officer Seals and asked the Defendant for "a hundred dollars worth" of cocaine. The Defendant then instructed Ms. Hicks and Officer Seals to go buy him a candy bar from a gas station. Officer Seals and Ms. Hicks drove back to the Exxon gas station and purchased a candy bar. At some point, Officer Seals gave Ms. Hicks the recording device in case they were separated again.

As they were driving back to the house, Officer Seals "noticed [the Defendant] driving from - - or riding a bicycle from the first house on the left, which I've known it's what we call a crack house" to another house. They saw the Defendant go to the back of the other house and motion for Ms. Hicks to follow him. At the back of the house, Ms. Hicks and the Defendant smoked crack cocaine, and the Defendant gave Ms. Hicks .2 grams of cocaine.

*State v. Laythaniel Haney*, E2009-00875-CCA-R3-CD, slip op. at 5-6 (Tenn. Crim. App. May 11, 2010), *perm. app. denied* (Tenn. Oct. 12, 2010).

Counsel argued at the motion for a new trial hearing that at the trial, it became obvious the Defendant was under the influence of some type of intoxicant. Counsel reminded the trial court that after the jury began its deliberations, the court addressed the Defendant and ordered a drug test. Counsel stated that when questioned by the court, the Defendant said he had not slept in three or four days. Counsel said the test was positive for cocaine, and the report was received as an exhibit at the hearing. The report showed that the Defendant tested positive for cocaine but not the amount of cocaine in his blood or urine. Counsel also argued that the Defendant was entitled to a new trial because two jurors fell asleep when the recording of the transaction was played during the trial. Counsel said he did not know how many jurors fell asleep.

The trial court found that the Defendant did not mention drug use at the trial and noted his explanation for his demeanor was a lack of sleep. The court found that although the Defendant tested positive for cocaine, nothing in the record warranted a new trial. The court stated that it was certain the Defendant would have mentioned his drug use if he thought drugs influenced him during the trial.

The trial court found that the jurors' sleeping was brought to the court's attention late in the trial. It found that a female juror denied sleeping during the trial and explained clearly what she was doing. The court found that a male juror was less convincing and that the juror said he thought he heard everything in the recording. The court said whether the jurors were sleeping "made no difference" because both jurors were excused and replaced with alternates. The court said, "[T]here can be nothing at all, no inference whatsoever drawn from the other ten jurors. Nobody saw them do anything. There is no way that what may have occurred with two can cause any blight on the remaining jurors, and the replacement of these two . . . took care of that." This appeal followed.

## I

The Defendant contends that the trial court erred by finding he was not prejudiced by jurors' sleeping during the trial. He argues two jurors' sleeping entitles him to a new trial because the jurors slept when the crucial evidence in the case was presented. The State responds that no proof shows the jurors who participated in the deliberations were asleep during the trial. We conclude that the Defendant is not entitled to relief.

As a preliminary matter, the State argues the issue is waived because the Defendant failed to object contemporaneously when he first noticed the sleeping jurors and waited until the recording ended and the State rested its case. The Defendant does not respond to the State's argument. Tennessee Rule of Appellate Procedure 36(a) states that relief is not required to be "granted to a party responsible for an error or [to a party] who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of the error." We note that although the Defendant did not object when the recording was played for the jury, counsel requested a bench conference in which counsel provided information regarding the sleeping jurors. The issue was addressed outside the jurors' presence, and the alleged sleeping jurors were dismissed and replaced with alternates. We will consider the issue on the merits.

After the State rested its case-in-chief at the trial, a jury-out hearing was held. The Defendant requested a "new trial" on the ground that two jurors were sleeping when portions of the recording were played. The jurors were identified. A female juror was seen sleeping seconds before the recordings ended, and counsel said it looked like the recording's ending "snapped her awake." The court noted that a male juror appeared to have fallen asleep because his eyes were closed, his head was laid back, his mouth was open, and a toothpick was falling out of his mouth.

The trial court discussed the proper procedure to determine if the two jurors or any others were sleeping during the State's proof. The parties discussed playing the recording again, calling all the jurors into the courtroom to ask if they dozed during the recording, and dismissing the two jurors and replacing them with the two alternates. The court did not want to question the jurors. The court excused the two jurors and placed the alternates on the jury.

A sleeping juror may warrant a new trial when an objection is promptly raised and prejudice is established. *State v. Chestnut*, 643 S.W.2d 343, 346 (Tenn. Crim. App. 1982). A mere showing that a juror slept during a portion of the evidence is insufficient to warrant a new trial. *Id.* "Whether a juror was asleep or otherwise inattentive at some time during the trial is a question" within the trial judge's discretion. *Gary Bernard Sanders v. State*, No. 02-C-01-9206-CR-00137, slip op. 8 (Tenn. Crim. App. Mar. 30, 1994). In determining whether to grant a new trial, the trial court may consider the length of time the juror slept and the importance of the evidence presented. *Id*. Likewise, a trial court may choose to dismiss jurors who are "unable or disqualified to perform their duties." Tenn. R. Crim. P. 24(f). A trial court's decision to dismiss a juror and to select an alternate juror is reviewed under an abuse of discretion standard. *State v. Millbrooks*, 819 S.W.2d 441, 445 (Tenn. Crim. App. 1991).

In the present case, two jurors were seen sleeping during the presentation of the proof. The trial court was notified of the sleeping jurors. The proper procedure was discussed outside the jurors' presence, and the trial court, without objection from the Defendant, dismissed the two jurors and seated the alternates. No evidence was presented showing that any other juror slept during the trial, and the alleged sleeping jurors were replaced with alternates, which remedied any issue. This court has concluded that such a procedure is proper and does not create prejudice. *See State v. Devaron Taylor*, No. W2009-01252-CCA-R3-CD, slip op. 6 (Tenn. Crim. App. Sept. 12, 2011) (concluding that replacement of an alleged sleeping juror by an alternate during jury deliberations did not warrant a mistrial or a new trial). The Defendant is not entitled to relief on this basis.

**II**

The Defendant contends that the trial court erred by finding he was not prejudiced by his being under the influence of drugs at the trial. He argues that his being under the influence made him incompetent to stand trial and that the court should have conducted a competency hearing. The State responds that the Defendant has failed to show how the positive drug test prejudiced him at the trial. We agree with the State.

"The Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee constitution prohibit the trial of a person who is mentally incompetent." *State v. Reid*, 164 S.W.3d 286, 306 (Tenn. 2005) (citing *Pate v. Robinson*, 383 U.S. 375 (1966); *State v. Blackstock*, 19 S.W.3d 200, 205 (Tenn. 2000)). A defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense." *Mackey v. State*, 537 S.W.2d 704, 707 (Tenn. Crim. App. 1975). The Defendant has the burden of establishing incompetence to stand trial by a preponderance of the evidence. *Reid*, 164 S.W.3d at 306-07.

The record shows that after the jury began its deliberations, the trial court addressed the Defendant. The court stated that it was "going to have [the Defendant] drug screened today . . . for the purpose of . . . clearing up any question . . . as to what your condition may be today relating to drugs." The court was concerned because the Defendant appeared sleepy, although it is unclear when the trial court noticed the Defendant's sleepy demeanor. The Defendant explained that his appearance was a result of his not sleeping in three or four days. The court said the Defendant had appeared sleepy and had admitted previously to being "an addict." The court found that the drug screen would not prejudice him in anyway. The court instructed the court officers to ensure "that no juror sees anything of this going on." The record does not show that the court was informed of the drug test results or that the Defendant's demeanor was addressed again.

In his brief, the Defendant concedes it was not apparent at the start of the trial that the he was under the influence of an intoxicant. We disagree that the positive drug screen shows that the Defendant was intoxicated at the time of the trial. The test result indicates he had consumed cocaine recently but does not show that the Defendant was intoxicated at the time of the trial. He provided the court with the explanation that he had not slept in three or four days, which reasonably explained his appearance. We note the Defendant did not request a competency hearing. Likewise, although the Defendant claims his ability to assist in his defense was impaired by his alleged intoxication, the record shows that the Defendant told counsel about one of the sleeping jurors. In the jury-out discussion regarding the sleeping jurors, the Defendant told the court that he saw the male juror sleeping when the recording was played and that he told counsel about his observation. The Defendant has failed to show that he did not understand the nature and object of the trial, that he was unable to consult and assist counsel in preparing his defense, or that the trial court erred by failing to conduct a competency hearing. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE