# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 6, 2002

## STATE OF TENNESSEE v. LARRY D. ANDERSON

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 6938     Joseph H. Walker, Judge**

---

**No. W2001-02371-CCA-R3-CD  - Filed April 11, 2003**

---

The defendant was found guilty by a jury of first degree felony murder and especially aggravated burglary.  He was sentenced to life plus twelve years, respectively, in the Department of Correction. The defendant contends that he was mentally incompetent to stand trial or to give a knowing, intelligent, and voluntary waiver of his Miranda rights and that his sentences were in error. We affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Gary F. Antrican, District Public Defender, and Julie K. Pillow, Assistant Public Defender, for the appellant, Larry D. Anderson.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and James Walter Freeland, Jr., and Tracey A. Brewer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendant, Larry D. Anderson, raises four issues:
(1)     Whether the trial court erred in finding the defendant to be mentally competent to stand trial,
(2)     Whether the trial court erred in finding the defendant mentally competent to give a knowing, intelligent and voluntary waiver of his Miranda rights,
(3)     Whether the trial court erred in imposing the maximum sentence for especially aggravated burglary, and
(4)     Whether the trial court erred in ordering the sentences for first degree murder and especially aggravated burglary to run consecutively.

## Background

Rubye Thompson, the victim, eighty-eight years old, was found badly beaten in her home in Henning, Tennessee, on the morning of March 22, 2000. Her caretaker found the victim in her bed with some of her clothes removed. The victim was bloodied and had a swollen neck and a bruised face. She was unable to speak. She was transported to the Regional Medical Center ("the Med") in Memphis. She never regained consciousness and died as a result of those injuries on April 1, 2000. Prior to the beating, the victim had difficulty both walking and hearing. There were blood stains and semen found on the victim's sheets.

DNA testing identified the semen as the defendant's, and the defendant confessed to breaking into the victim's home in the middle of the night and hitting her when she woke up. Additionally, the defendant's shoe print and fingerprints were found at the crime scene. The defendant was tried and convicted of first degree felony murder and especially aggravated burglary.

The Lauderdale County Sheriff's office initially identified a number of individuals, including the defendant, who "hung around" the streets of Henning at night, as suspects. The Sheriff's office identified the defendant as a suspect when he attempted to sell a package of Snickers candy bars to a local resident. Snickers bars were missing from the victim's home. The defendant also obtained change for a two-dollar bill, and there was a two-dollar bill missing from the victim's home as well.

On March 23, 2000, Lucian Herron, an investigator with the Lauderdale County Sheriff's Department, questioned the defendant. Officer Herron stated the defendant was advised of his rights, was not coerced, was not denied any comforts during the questioning, and appeared to understand the process. Additionally, the defendant signed a waiver and admonition form indicating he understood and waived his rights. The defendant said he spent the night in question in an abandoned home, after having a misunderstanding with his girlfriend. He did not indicate at this time that he had been in the victim's home.

The Lauderdale County Sheriff's office collected blood from the defendant on March 24, 2000. Terry Davis, an investigator with the Sheriff's office, produced a consent form with the defendant's signature, indicating that the defendant consented to the blood drawing. DNA taken from the semen found on the victim's bed matched that of the defendant.

Kenny Nelson, a criminal investigator with the Lauderdale County Sheriff's Department, interviewed the defendant on March 24, 2000. He stated he read the defendant his rights and that the defendant appeared to understand what was being said. He stated the defendant did not appear to be intoxicated nor was the defendant denied any comforts. The defendant signed a waiver and admonition form, which had been read and explained to him moments before by Scott Wally, another investigative agent. The defendant gave a statement that was similar to the one he gave the day before, indicating he had spent the evening in question in an abandoned home.

On April 18, 2000, Officer Nelson again questioned the defendant. Officer Nelson indicated the circumstances surrounding this questioning were similar to the ones of the prior questioning. The defendant had been advised of his rights, had not been denied any creature comforts, and had signed a waiver and admonition form after having the contents of that form explained to him. The defendant then gave a statement indicating that he had broken into the victim's house in the early morning of March 22, 2000, and, as he was going through some drawers in the bedroom, the victim awoke. He said her waking up had scared him, and he hit her twice with an open hand. He then left the house, taking a two dollar bill and some Snicker's candy bars.

During the April 18, 2000, questioning, Agent Wally reviewed with the defendant what happened on the night in question. The defendant then began to write out a statement. Because the defendant was having trouble writing, Officer Nelson took over the actual writing. The process used was to go over the statements the defendant had given to Agent Wally and then ask the defendant if each one was correct. As the defendant indicated the statement was correct, Officer Nelson physically wrote what the defendant was confirming. As a result, Officer Nelson wrote the actual incriminating statements.

Dr. Cynthia Gardner, the medical examiner in Shelby County who performed the autopsy of the victim, indicated the victim died as a result of at least nine blunt traumas to the head. The victim had extensive bruising and lacerations of the head and neck. She stated the victim had bleeding in deep tissues and that such bleeding would be produced by a good deal of force.

## Pretrial

The defendant claimed he was mentally incompetent to stand trial and that he gave an unknowing waiver of his rights prior to giving the incriminating statement on April 18, 2000. A pre-trial hearing was held on December 8, 2000, to address those claims.

## Motion to Suppress/Competency Hearing

Dr. John McCoy, a clinical psychologist, testified that the defendant was competent to stand trial. Along with Dr. William W. Daniels, Jr., another psychologist in his office, Dr. McCoy interviewed and observed the defendant for one hour and fifty minutes. Dr. McCoy testified he had conducted more than 250 competency evaluations. He stated the defendant would be able to assist his attorney; understood the roles of the judge, the district attorney, and the jury; and, essentially, understood a lot about the whole process. His opinion was that the defendant was manipulative and understood a lot more than would be indicated through a battery of tests. Based on his interview with the defendant and his professional expertise, Dr. McCoy concluded this defendant was competent to stand trial.

Dr. Michael Guinle, a psychologist health service provider, testified the defendant was not competent to stand trial. He indicated the defendant was mildly mentally retarded, had an IQ of fifty-eight (58), and would not be able to participate appropriately in a trial. Dr. Guinle spent more than

eight hours with the defendant, examined his past school records, and administered a number of tests. Based on his research, he concluded the defendant was not manipulative but had an impaired ability to learn and understand. The trial court found the defendant competent to stand trial.

The trial court also found that the incriminating statements made by the defendant should not be suppressed. Considering the totality of the circumstances, the trial court determined that the defendant had been advised of his rights, understood what he was doing, and made a voluntary, uncoerced statement. Additionally, the trial court determined the statements given by the defendant on March 23 and March 24, 2000, were admissible.

## Trial

On May 23, 2001, after a two-day trial, a jury found the defendant guilty of first degree felony murder and especially aggravated burglary. The jury sentenced the defendant to life imprisonment for the felony murder, finding two statutory aggravating factors: (1) "The murder was knowingly committed, solicited, directed, or aided by the defendant, while the defendant had a substantial role in committing or attempting to commit, or was fleeing after having a substantial role in committing or attempting to commit, any first degree murder, arson, rape robbery, burglary, theft, kidnaping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb," Tenn. Code Ann. § 39-13-204(i)(7); and (2) "The victim of the murder was particularly vulnerable due to a significant handicap or significant disability, whether mental or physical, and at the time of the murder, the defendant knew or reasonably should have known of such handicap or disability," Tenn. Code Ann. § 39-23-204(i)(14).

## Sentencing

On June 6, 2001, the trial court approved the jury-imposed sentence of life imprisonment. The defendant submitted the following non-statutory mitigating factors:
(1)     The defendant is mentally retarded,
(2)     At the time of the offense, defendant's mental and emotional development was significantly below that of persons his chronological age,
(3)     The defendant can barely read or write,
(4)     The defendant experienced difficulties learning,
(5)     The defendant has never developed the ability to live independently,
(6)     The defendant's criminal activity was caused by various psychological factors and alcohol-related problems that can be treated and will diminish with age,
(7)     The defendant's capacity to appreciate the criminality of his conduct or to conform his conduct with the requirements of the law was impaired,
(8)     The defendant's ability to remember the events of the crime is impaired,
(9)     The defendant has a history of alcohol and drug addiction,
(10)    The defendant has expressed remorse and regret for the death of the victim,
(11)    The defendant can be treated and rehabilitated, and
(12)    The defendant has no prior felony convictions.

-4-

See Tenn. Code Ann. § 40-35-113(13).

The State filed a notice of intent to seek increased punishment as to the especially aggravated burglary. In addition, the State submitted the statutory aggravating circumstances under Tennessee Code Annotated sections 39-13-204(i)(7) and (14) in declaring its intent to seek a sentence of life without parole.

At the sentencing hearing, the trial court approved the jury's life sentence for the first degree murder. As to the especially aggravated burglary, the court determined the defendant should be sentenced as a Range I standard offender. Tenn. Code Ann. § 40-35-105. The trial court found no statutory mitigating factors under Tennessee Code Annotated section 40-35-113.[1] The trial court found the following enhancement factors under Tennessee Code Annotated section 40-35-114 (supp. 2001) (amended 2002):

    (1)    The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

    (4)    (The) victim of the offense was particularly vulnerable because of age or physical or mental disability . . .;

    (5)    The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;

    (7)    The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;

    (8)    The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;

    (10)    The defendant had no hesitation about committing a crime when the risk to human life was high; and

    (16)    The crime was committed under circumstances under which the potential for which bodily injury to a victim was great.

The trial court found the enhancing factors greatly outweighed the mitigating factors and sentenced the defendant to an enhanced sentence of twelve years for the especially aggravated burglary. The trial court also sentenced the defendant, as a violent offender, to serve 100% of the life sentence, pursuant to Tennessee Code Annotated section 40-35-501(i)(2)(A). The trial court ordered the especially aggravated burglary sentence to run consecutively to the felony murder life sentence, finding the defendant to be an offender whose record of criminal activity is extensive, Tenn. Code Ann. § 40-35-115(b)(2), and to be a dangerous offender whose behavior indicates little or no regard for human life. Tenn Code Ann. § 40-35-115(b)(4).

In pronouncing sentence, the trial judge said the following:
    Mr. Anderson, the Court believes this is one of the most despicable acts imaginable, an 88-year-old widow in her own house, in her own bed, beaten so severely she soon died as a result. Her bedclothes were removed and your sperm and

---

[1] The trial court did find the defendant's mild retardation as a non-statutory mitigating factor. *Infra*. P. 22.

semen were found on her bed sheets which the DNA expert says was yours to the exclusion of every other human on the planet.

Summertime will soon be over. The crisp, cool air of fall with the red, yellow and orange leaves will be out for people to enjoy but not for you, for you won't be able to see the trees. In winter, nature will blanket the land with snow for us to enjoy but not for you, Mr. Anderson, because you won't be able to touch it. In spring, the daffodils will bloom but you won't know it because you're going to be incarcerated in the deepest, darkest dungeon hole available in the Tennessee Department of Corrections. I am sentencing you, Mr. Anderson, who broke into the home of an 88-year-old widow and beat her to death in her own bed where you deposited your sperm and semen on her bed sheets, I am sentencing you to serve your sentence in a dungeon without windows and without breaks. A sentence of life plus 12 years in the dungeon hole on bread and water and no sunshine.

We stand in recess.
The defendant's motion for a new trial was denied on August 29, 2001.

## Issues

We now revisit and specifically address the issues raised by the defendant:
(1)     Whether the trial court erred in finding the defendant to be mentally competent to stand trial;
(2)     Whether the trial court erred in denying the defendant's motion to suppress statements made by the defendant, finding the defendant competent to give a knowing, intelligent and voluntary waiver;
(3)     Whether the trial court erred in imposing the maximum sentence for especially aggravated burglary; and
(4)     Whether the trial court erred in ordering the sentences for first degree murder and especially aggravated burglary to run consecutively.

## Analysis

### *Mental Competency*

The Fourteenth Amendment to the United States Constitution and Article I, section 8 of the Tennessee Constitution prohibit the trial of a person who is mentally incompetent. Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966); Berndt v. State, 733 S.W.2d 119, 122 (Tenn. Crim. App. 1987). The standard for determining competency to stand trial is whether the accused has the "capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense." State v. Black, 815 S.W.2d 166, 174 (Tenn. 1991) (quoting Mackey v. State, 537 S.W.2d 704, 707 (Tenn. Crim. App. 1975)); *see also* Dusky v. United

States, 362 U.S. 402, 402 80 S. Ct. 788, 789, 4 L. Ed. 2d 824 (1960) (ability to consult with lawyer and a "'rational as well as factual understanding of the proceedings'").

Essentially, the competency issue for this defendant came down to a "battle of experts." Dr. McCoy testified, both at the competency hearing and at trial, that the defendant was competent to stand trial. Dr. Michael Guinle testified, both at the competency hearing and at trial, that the defendant was not competent to stand trial. The trial court was able to hear and weigh the competency evidence as it was presented. The trial court found that the defendant was mildly mentally retarded but able to function without difficulty. The trial court found the defendant had worked, had a drug or alcohol dependence, was manipulative, and had antisocial behavior. The trial court noted the defendant completed the tenth grade and had a fund of general information and vocabulary use, along with other verbal skills, that made him capable of comprehending what was going on. The trial court, therefore, found the defendant competent.

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The defendant's competence was a finding made at the suppression hearing. The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, this Court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court is a question of law that this Court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

The defendant has not met his burden here. He argues the evidence should preponderate against the finding of competency by the trial court, based on his conclusory determination that because Dr. Guinle conducted a more extensive evaluation of the defendant than did Dr. McCoy, that Dr. Guinle's determination should control. The trial court weighed the credibility and the evidence presented by both experts at the competency hearing and made the determination that the defendant was competent. Dr. McCoy and Dr. Daniels spent nearly two hours with the defendant, and Dr. McCoy had conducted more than 250 similar competency evaluations. The trial court was entitled to rely upon Dr. McCoy's determinations, despite the testimony of Dr. Guinle. Dr. McCoy determined the defendant was competent, and we cannot agree the evidence compels a determination that a longer examination necessarily means a more correct examination.

We conclude the trial court did not err in finding the defendant mentally competent to stand trial.

*Involuntary Waiver*

The trial court's determination at the suppression hearing that a confession was voluntary is presumptively correct on appeal. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). This determination is binding unless the evidence in the record preponderates against that finding. State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999).

The fact that one suffers from certain mental deficiencies does not necessarily prevent that person from understanding and waiving constitutional rights. *See generally* State v. Middlebrooks, 840 S.W.2d 317, 327 (Tenn. 1992); 4 Wharton's Criminal Evidence § 643, p. 169 (14th ed. 1987). A person with a mental deficiency may waive his Miranda rights if that waiver was knowingly and voluntarily made. State v. Green, 613 S.W.2d 229, 233 (Tenn. Crim. App. 1980); Braziel v. State, 529 S.W.2d 501, 505-06 (Tenn. Crim. App. 1975). When determining whether an accused has voluntarily, knowingly, and intelligently waived his Miranda rights, this Court must consider the totality of the circumstances which existed when the accused waived these rights. Middlebrooks, 840 S.W.2d at 326; State v. Benton, 759 S.W.2d 427, 431 (Tenn. Crim. App. 1988). The "totality of the circumstances must reveal 'an uncoerced choice and the required level of comprehension.'" State v. Blackstock, 19 S.W.3d 200, 208 (Tenn. 2000) (quoting State v. Stephenson, 878 S.W.2d 530, 545 (Tenn. 1994)). Where a defendant contends that his waiver of Miranda rights was not voluntarily or understandingly made, the court must consider such factors as the defendant's age, level of functioning, prior criminal justice experience, demeanor, responsiveness to questioning, possible malingering, and the manner in which the Miranda rights were explained. Blackstock, 19 S.W.3d at 208. However, no single factor is necessarily determinative. Id.

The trial court considered the totality of the circumstances and found the defendant had made a voluntary, uncoerced waiver of his rights when he made his incriminating statement on April 18, 2000. The trial court indicated it considered the circumstances surrounding the defendant's confession, including the testimony of the psychologists finding the defendant competent to stand trial, and it found the defendant was able to appreciate the circumstances and consequences of giving a statement to law enforcement officers. It determined that the defendant was advised of his rights and signed a form indicating he understood those rights. Moreover, even if the trial court found the defendant suffered from mental deficiencies, that does not necessarily prevent him from understanding and waiving his constitutional rights. Middlebrooks, 840 S.W.2d at 327.

This determination is presumptively correct and places the burden on the defendant to show the evidence preponderates against it. The defendant has failed to meet this burden. The defendant submits that the April 18, 2000 statement was in Officer Nelson's handwriting and was obtained by the officer going over oral statements made by the defendant, asking the defendant if "this is how it went?," and then writing down the responses. The defendant, however, does not show how the evidence preponderates that a statement obtained in this manner is involuntary, and we cannot conclude that it is. Additionally, the defendant argues that his limited mental state rendered him incapable of making a knowing waiver of his rights. The defendant asks this Court for that proposition to stand by itself. The trial court, however, was able to evaluate the credibility of the

evidence pertaining to the defendant's mental state and determined the defendant was mentally capable of making a voluntary waiver. The court found the circumstances surrounding the obtaining of the April 18, 2000, statement to be non-coercive and that the defendant's mental functioning was adequate to make the waiver. The bare-bones declaration by the defendant that he was limited mentally, standing for the proposition that the defendant was incapable of making a knowing waiver, simply does not preponderate against the finding of the trial court. Indeed, our Supreme Court recently reiterated this well-settled principle that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise". State v. Christopher M. Flake, No. W2000-01131-SC-R11-CD (Tenn. Oct. 24, 2002, at Jackson) (citing State v. Odom, 928 S.W. 2d 18, 23 (Tenn. 1996)).

We conclude the trial court did not err in finding the defendant made a knowing and voluntary waiver of his rights and, therefore, the statements made by the defendant on March 23, 2000, March 24, 2000, and April 18, 2000, were properly admitted.

### *Maximum Sentence for Burglary*

The defendant claims the trial court erred in sentencing him to twelve years for the especially aggravated burglary, which is beyond the presumptive sentence of eight years. He claims the court improperly applied the enhancement factors.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness, and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Comm'n Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors

do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); see Tenn. Code Ann. § 40-35-210 Sentencing Comm'n Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); Lavender, 967 S.W.2d at 806; Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

We will review the enhanced sentence with the presumption of correctness, as the trial court considered the sentencing principles as established in Tennessee Code Annotated section 40-35-401(d). In our review, we will consider the following six factors as required by Tennessee Code Annotated section 40-35-210(b):

(1) The evidence, if any, received at the trial and the sentencing hearing: The evidence of the defendant's guilt and the heinousness of the crime was overwhelming.

(2) The presentence report: There is evidence in the record that the trial court considered the Tennessee Department of Correction ("TDOC") investigation report in considering the sentence. The TDOC report stated the defendant was not an eligible candidate for probation.

(3) The principles of sentencing and arguments as to sentencing alternatives: Tennessee Code Annotated section 40-35-103 designates three main principles to be considered upon sentencing: Tenn. Code Ann. § 40-35-103 (A): "Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;" (B): "Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses;" or (C): "Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." This defendant had a history of past criminal activity, and anything less restrictive than confinement would certainly diminish the seriousness of beating to death a helpless eighty-eight-year old woman and then ejaculating into her bloody bed sheets.

(4) The nature and characteristics of the criminal conduct involved: This was a heinous and violent crime. It involved the violent beating to death of an eighty-

eight-year-old woman while she was helpless in her bed. In addition to ejaculating into the victim's bed sheets, the defendant stole candy and a two-dollar bill.

The defendant contends the trial court misapplied enhancement factor (4), that the victim was an eighty-eight-year-old woman, since age alone is not enough to warrant application of this factor. *See* State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). The record, however, indicates the trial court did more than just consider the victim's age, but considered how the victim's age and disability made her particularly vulnerable in being unable to defend herself against a physical attack or to summon help. The defendant further argues that there are some instances where no victim, regardless of their physical or mental abilities, could resist an offense committed in a particular manner. State v. Poole, 945 S.W.2d 93, 97 (Tenn. 1997). He claims the victim's vulnerability was irrelevant to the injuries she suffered from the beating and that any victim would have suffered similarly. In support of this proposition, the defendant submits State v. Butler, 900 S.W.2d 305 (Tenn. Crim. App. 1994), where an elderly woman who had a physical disability was shot and killed, and since no person, regardless of physical ability, could resist a bullet, this Court concluded her disability was an improper enhancement factor. A more careful reading and application of Butler to the instant case renders the opposite result. In Butler, this Court concluded:

> This Court is convinced that the victim's age and physical disability were not a factor in the commission of the offense. If a weight lifter, football player, or any other person, male or female, who possessed adequate strength to resist a crime against the person, had entered the basement on the morning in question, that person's strength and ability would not have permitted him or her to resist the crime committed by the appellant. He would have killed any person who entered the basement on the morning in question. In short, the person's strength and ability to resist the commission of an offense would not have been a factor. No person can resist an unexpected firing of a weapon from a distance.

Butler, 900 S.W.2d at 313. In the instant case, had the victim been a weight lifter or a football player, it is overwhelmingly likely they would have been more successful in resisting the physical assault rendered by the defendant. The defendant likely would not have killed *any* person lying in the victim's bed using the manner of physical assault that he did. In short, in the instant case, the victim's strength and ability to resist the offense *almost certainly* would have been a factor in the severity of the beating. Our victim was not shot, like the victim in Butler, but beaten. The trial court heard evidence about the nature of the crime and the disability of the victim and concluded her vulnerability was an enhancing factor to this beating.

In State v. Anthony Murff, No. W2001-01459-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 498, at *39-40 (June 11, 2002 at Jackson), the defendant beat a partially paralyzed, seventy-seven-year-old man with a hammer, and the vulnerability enhancement factor was applied. The defendant argued that the enhancement factor was misapplied because, referring to State v. Poole, no victim could have resisted an offense in that manner. Determining that the first hammer blows would not have rendered the victim incapable of defending himself, this Court disagreed, stating, "There can be little doubt, however, that a young and able-bodied man would have been much better able to

defend himself from the defendant's attack than the partially paralyzed, seventy-seven-year-old victim in this case. We conclude, therefore, that the trial court did not err in applying enhancement factor (4) to increase the defendant's punishment." State v. Murff, at *39-40. The instant case is more similar to Murff than Butler. There is no evidence in the instant case that the defendant used a weapon in beating the victim, such that it would have made her physical vulnerability irrelevant to the attack. In contrast, the evidence shows the beating was with the defendant's bare hands. This strongly embraces her vulnerability as an enhancing factor.

Indeed, the State need not even prove the vulnerability was an actual motivating factor for the crime. As our Supreme Court stated in State v. Lewis, 44 S.W.3d 501 (Tenn. 2001), "[a] victim's age or physical condition might make the victim 'vulnerable' in a general sense. That particular vulnerability, however, may play no part in the crime. A vulnerability that is wholly irrelevant to the crime is not 'appropriate for the offense' as required by Tenn. Code Ann. § 40-35-114." Id. at 505. The Supreme Court further stated, "Nothing in Poole should be read to place an additional burden on the State to prove that a defendant actually evaluated the vulnerabilities of his victims and then acted to capitalize on those perceived vulnerabilities." Id. In the instant case, we cannot conclude the victim's vulnerability was "wholly irrelevant" to the crime. It is enough that the defendant took advantage of the victim's particular vulnerability. The victim's age, weakness, hearing difficulties, and walking difficulties certainly contributed to the severity of the beating she suffered. Whether the defendant was aware of these vulnerabilities is irrelevant.

Therefore we cannot, indeed need not, speculate whether the defendant recognized that the victim was elderly and disabled, and that recognition motivated him to beat her. We can only base our decision on whether the defendant shows that the evidence preponderates against the trial court's finding that the victim's vulnerability contributed to the severity of the beating she suffered. We conclude the record does not preponderate against the trial court's findings and that enhancement factor (4) was properly applied.

(5) Evidence and information offered by the parties on the enhancement and mitigating factors in Tennessee Code Annotated sections 40-35-113 and 40-35-114:

As previously indicated, the defendant submitted a list of twelve non-statutory mitigating factors. The State offered two aggravating circumstances increasing the life sentence for the murder to life without the possibility of parole. As noted, the trial court found the defendant's mild retardation to be a slight mitigating factor and found the following enhancement factors under Tennessee Code Annotated section 40-35-114 (supp. 2001) (amended 2002):

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(4) (The) victim of the offense was particularly vulnerable because of age or physical or mental disability . . .;

(5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;

(7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;

(8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, Id. § 40-35-114(8);

(10) The defendant had no hesitation about committing a crime when the risk to human life was high; and

(16) The crime was committed under circumstances under which the potential for which bodily injury to a victim was great.

The defendant is correct in pointing out that the use of enhancement factors that are essential elements of the offense itself are prohibited and that enhancement factors must be proven by evidence other than that necessary to establish the offense. State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994). The elements necessary to establish especially aggravated burglary are found in Tennessee Code Annotated section 39-14-404(a):

(1) Burglary of a habitation or building other than a habitation; and

(2) Where the victim suffers serious bodily injury.

As such, the defendant argues that enhancement factor (5), treating a victim with exceptional cruelty, was misapplied, because serious bodily injury is an element of especially aggravated burglary. We conclude that *this* type of serious bodily injury, an elderly woman being beaten while helpless in her bed and then having her bed ejaculated upon, is beyond the serious bodily injury required and does indicate exceptional cruelty. Therefore, we conclude enhancement factor (5) was properly applied.

The defendant also claims enhancement factors (10) and (16) were misapplied. The State agrees. To apply factor (10), that the defendant had no hesitation about committing a crime where the risk to human life was high, that risk needs to be to individuals other than the victim. *See* State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002) (noting the distinction in Tennessee Code Annotated section 40-35-114 factor (10) from factor (16). Factor (16) specifically restricts its application to "the crime", and "the victim". The failure of the legislature to make similar restrictions in (10), using "risk to human life" language, indicates a broader reading requiring a risk to human life *in addition* to the victim)). In the present case, no one else was exposed to danger, so this factor was inapplicable. As to factor (16), that the crime was committed under circumstances with great potential for bodily harm, since serious bodily harm is an element of especially aggravated burglary, this factor was indeed inapplicable.

The defendant does not challenge the application of enhancement factors (1), (7), and (8). Additionally, we hold that the trial court properly applied enhancement factors (4) and (5). As to this factor under Tennessee Code Annotated section 210 (b), we hold it weighs heavily in favor of sentencing beyond the minimum presumptive sentence.

Finally, we will review Tennessee Code Annotated section 40-35-210(b)(6):

(6) Any statement the defendant wishes to make in the defendant's own behalf about sentencing: The defendant made no statement, so it was properly not considered.

Having gone through this analysis, we hold the trial court properly enhanced the defendant's sentence beyond the presumptive sentence. Especially aggravated burglary is a Class B felony. Tenn. Code Ann. § 39-14-404(c). The sentencing range for a Class B felony is not less than eight (8) years nor more than thirty (30) years. Tenn. Code Ann. § 40-35-111(b)(2). For a Range I sentence, the range for a Class B felony is between eight (8) and twelve (12) years. Tenn. Code Ann. § 40-35-112 (a)(2). Having found enhancement factors, we conclude the trial court did not err in enhancing the sentence beyond the minimum eight years. Tenn. Code Ann. § 40-35-210(e); Arnett, 49 S.W.3d at 257.

### *Consecutive Sentencing*

The defendant contends the trial court erred in ordering the sentence for especially aggravated burglary to run consecutively to the life sentence for the murder. The trial court ordered the sentences to be served consecutively, finding it necessary to protect the public against further criminal conduct by the defendant, and that consecutive sentences reasonably relate to the severity of the offenses committed. The trial court determined the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and he had no hesitation about committing a crime in which the risk to human life is high. The court further found the defendant had an extensive criminal history.

A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
(2) [t]he defendant is an offender whose record of criminal activity is extensive;
(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
(6) [t]he defendant is sentenced for an offense committed while on probation; or
(7) [t]he defendant is sentenced for criminal contempt.

-14-

Tenn. Code Ann. § 40-35-115(b); *see also* State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). Furthermore, in the event the trial court finds defendant is a "dangerous offender," it must also determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments. The defendant has failed to meet his burden here. We can find nothing in the record to indicate the trial court erred in determining the defendant to be a dangerous offender. The particular facts of this case, especially the helplessness of the victim and the brutality of the beating she suffered, strongly support the trial court's finding that the defendant is dangerous. Additionally, despite the defendant's claims to the contrary, we agree with the trial court that the defendant had an extensive criminal history. The defendant had been convicted of simple assault, disorderly conduct and theft, as well as three public intoxications.

Having determined the defendant to be a dangerous offender, we find nothing in the record to preponderate against the trial court finding that consecutive sentences in this case (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. While the defendant is correct that, under the principles of sentencing in Tennessee Code Annotated section 40-35-103(4), sentences imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed, that in no way leads us to ignore the principles under Tennessee Code Annotated section 40-35-115(b), which clearly indicate the legislature's intent that occasionally crimes do merit more than the least severe punishment, and the entire principles behind Tennessee Code Annotated section 40-35-114, which clearly indicate the legislature's intent that there are certain factors that should serve to enhance punishment for a crime. The Tennessee Code is not to be read in a vacuum. If the least severe punishment was always to be given, consecutive sentencing and enhancement factors would not exist.

This was a heinous offense. The "dungeon speech" given to the defendant at his sentencing encapsules the trial court's determination that the crime was exceptionally cruel. We cannot conclude the trial court erred in ordering the sentences for especially aggravated burglary to run consecutively to the life sentence for the murder.

Accordingly, we affirm all judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE