IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2025

## JOHN TODD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 06-08050      David L. Pool, Judge**

———————————————————

## No. W2024-01506-CCA-R3-PC

———————————————————

The Petitioner, John Todd, filed an untimely petition for post-conviction relief claiming he received the ineffective assistance of counsel and that due process required the tolling of the statute of limitations because of his alleged mental incompetence. The post-conviction court summarily dismissed the petition, concluding the Petitioner had failed to present a prima facie case of mental incompetence to warrant an evidentiary hearing on the issue of due process tolling. The Petitioner appeals, claiming the post-conviction court erred in summarily dismissing the petition without an evidentiary hearing on the tolling issue because he presented a prima facie case of his mental incompetence. Following our review, we reverse the judgment of the post-conviction court and remand for an evidentiary hearing on the issue of whether the Petitioner is entitled to a tolling of the statute of limitations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Case Remanded**

STEVEN W. SWORD, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Lance Chism, Memphis, Tennessee, for the appellant, John Todd.

Jonathan Skrmetti, Attorney General and Reporter; Garrett Ward, Senior Assistant Attorney General; Steve Mulroy, District Attorney General; and Robert Gowen and Melanie Headley, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## I.    FACTUAL AND PROCEDURAL HISTORY

A Shelby County jury convicted the Petitioner in 2010 of both second and first degree murder in the deaths of his girlfriend and her father. *State v. Todd*, No. 2010-2640-CCA-R3-CD, 2012 WL 2150859 at *1 (Tenn. Crim. App. June 14, 2012).  The trial court sentenced him to concurrent terms of twenty years and life imprisonment, respectively.  *Id*.  The Petitioner filed a direct appeal, challenging, among other issues, the trial court's conclusion that he was competent to stand trial and the trial court's denial of his motion to suppress his pretrial statement on the basis that his *Miranda* waiver was involuntary due to his mental incompetence.  *Id*. at *1, *16.  His convictions were affirmed on direct appeal. *Id*. at *37.  The Petitioner did not apply for permission to appeal to the Tennessee Supreme Court.

In his July 2023 pro se petition for post-conviction relief, the Petitioner claimed he was "substantially incompetent," thereby entitling him to due process tolling of the statute of limitations.  The post-conviction court appointed counsel on August 2, 2023.  The State moved to dismiss the petition as untimely on May 23, 2024, and on August 5, 2024, the Petitioner's counsel filed an amended petition arguing that the statute of limitations should be tolled due to the Petitioner's mental incompetence.  Citing *Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 513 (Tenn. 2013), the amended petition summarized the Petitioner's "lifelong history of intellectual deficiencies" and submitted that the Petitioner "suffers from a mental disease or defect that prevents him from understanding his legal position and the options available to him and that also prevents him from making a rational choice among his options."  The petition set forth that appellate counsel had not advised the Petitioner of his right to file a post-conviction petition and that he did not have the capacity to file a petition on his own until two inmates, Mitchell Eads and Paul Johnson, explained his rights and assisted him in the filing.  The amended petition referenced and summarized expert competency evidence presented in pretrial motions, of which the Petitioner requested the post-conviction court take judicial notice,[1] and included attachments of various post-trial prison medical records.

On August 14, 2024, the post-conviction court held a hearing on the due process tolling issue.  At the hearing, the Petitioner was prepared to present witnesses, but the State requested a hearing on its May 2024 motion to summarily dismiss the petition as untimely prior to the presentation of any evidence.  The post-conviction court proceeded with the

---

[1] While there was no direct statement by the post-conviction court concerning judicial notice of the trial or appellate record, the post-conviction court referred to "tests throughout the years" in its September 2023 written order summarily dismissing the petition, indicating consideration of the pretrial information.

State's motion to dismiss first. In addition to its written motion concerning the untimeliness of the petition, the State argued Mr. Eads and Mr. Johnson were not experts qualified to testify to the Petitioner's alleged mental incompetence and that no expert proof was alleged in the petition. The State asserted there was only a summary allegation of mental incompetence and that unsupported, conclusory, or general allegations of mental illness were not sufficient to support the tolling of the statute of limitations. The State submitted the issue of mental incompetence had been "fully vetted at trial and on appeal" and that the petition should be summarily dismissed as time-barred due to having been filed well beyond the statute of limitations.

The Petitioner agreed that the issue of competency to stand trial had been litigated pretrial and requested the post-conviction court consider the medical opinions and evidence regarding the Petitioner's low IQ and mental capacity provided in the Petitioner's pretrial motions. The Petitioner did not dispute that appellate counsel's failure to advise him of his right to file a post-conviction petition was not a basis standing alone for due process tolling of the statute of limitations; however, the Petitioner argued this fact should be considered in combination with his low IQ and mental capacity to support due process tolling. Further, the Petitioner argued that Mr. Eads and Mr. Johnson would testify that he was unaware of his right to file a post-conviction petition until they explained it to him and that the Petitioner did not have the mental capability to "figure it out on his own." The Petitioner further explained that no new medical expert opinion would be presented because post-conviction counsel was not entitled to funds to hire a medical expert for a post-conviction claim. The Petitioner emphasized that two doctors had thoroughly examined him pretrial, and their opinions regarding his mental capacity were included in the trial jacket for the post-conviction court to review, thus reiterating his request for the post-conviction court to take judicial notice of the medical records from his trial.

The Petitioner also argued that his medical records from prison, which were attached to the amended petition, further supported his claim of mental incompetence for due process tolling purposes. These records indicated the Petitioner was prescribed Risperdal, at least as early as January 2014, and included references to the Petitioner's having been diagnosed as being schizophrenic and psychotic, at least as early as 2015.[2] The Petitioner did not have affidavits from the two prisoners who were ready to testify but argued they would testify concerning how "slow" the Petitioner was, as well as their observations on the Petitioner's ability or inability to read and write. The Petitioner argued this proof was more than conclusory, general allegations and was sufficient to establish a prima facie case that his mental capabilities prevented him from understanding his rights and the law, as

---

[2] According to the direct appeal summary of Dr. Angelillo's testimony, Dr. Angelillo did not test the Petitioner for defects such as schizophrenia, but he opined the Petitioner had difficulty with reality. *Todd*, 2012 WL 2150859 at *10.

well as preventing him from making rational decisions. Accordingly, the Petitioner argued summary dismissal would be inappropriate.

The post-conviction court summarily dismissed the petition and entered a written order detailing its findings on September 16, 2024:

> Here, counsel attached a medical report from the Tennessee Department of Correction listing medical problems "schiz., psychotic DO." Although some entries on these records appear to be made as early as 7/16/2013, these records do not address Petitioner's competence in the context of a post-conviction proceeding, and were made after the one (1) year filing deadline expired.
>
> This court begins with a presumption that the Petitioner is competent. See Reid ex rel. Martiniano v. State, 396 S.W.3d 478, 512 (Tenn. 2013). Counsel for Petitioner attached medical reports in the First Amended Petition for Post-Conviction Relief showing an April 3, 2015 medical report noting "schiz., psychotic DO" and a March 21, 2022 medical report noting that Petitioner is "psychotic" and has "schizophrenia." Those reports fail to establish incompetency between June 14, 2012, and June 14, 2013, and cannot operate to overcome the presumption of competence and whether the Petitioner is "able to make rational decisions concerning the management of his or her post-conviction appeals." Id. at 513.
>
> From the record it is clear that Petitioner, in tests throughout the years, consistently tests at a low IQ. In other words, the Petitioner suffers from a mental disease or defect. In 2010 the trial court, after listening to expert testimony from Drs. Angelillo and Hutson, found Petitioner competent for trial. The trial court's finding of competence was affirmed on appeal.
>
> This court cannot find, upon the Petition and statements of counsel, that Petitioner's low IQ prevented Petitioner from understanding his legal position and the options available to him between the dates of June 14, 2012, and June 14, 2013. Nor can this court find that Petitioner's low IQ prevented him from making a rational choice among his options between June 14, 2012, and June 14, 2013. Further, lay testimony from inmates Mitchell Eads and Paul Johnson would be insufficient non-expert testimony to establish incompetence under the Rumbaugh test.
>
> The Petition for Post Conviction Relief falls outside the one (1) year limitations period, and the Post-Conviction Petition contains only

- 4 -

unsupported, conclusory, and general allegations of mental illness, which are insufficient to require tolling and prevent summary dismissal. Petitioner has not presented a sufficient basis to toll the one (1) year statute of limitations.

The Petitioner timely appealed.

## II.    ANALYSIS

On appeal, the Petitioner argues the post-conviction court erred by summarily dismissing his petition for post-conviction relief. Specifically, the Petitioner claims he made a prima facie case for due process tolling of the statute of limitations which warranted an evidentiary hearing on the issue. The State responds that the post-conviction court appropriately summarily dismissed the petition as untimely because the Petitioner failed to make a prima facie case of mental incompetence. We agree with the Petitioner.

The Post-Conviction Procedure Act provides relief only when the petitioner's "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The Act further provides that a petition for post-conviction relief is barred unless filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final." Tenn. Code Ann. § 40-30-102(a). If it is apparent from the petition, any exhibits, and the record of the case that the petition was not filed within the limitations period, then the statute provides for summary dismissal by the post-conviction court. Tenn. Code Ann. § 40-30-106(b).

There is no dispute here that the Petitioner filed his petition outside the one-year statute of limitations. In addition, while Code section 40-30-102(b) provides three statutory exceptions to the statute of limitations for the filing of petitions for post-conviction relief, the parties do not dispute that none of the three statutory exceptions apply here. Despite the legislature's emphasis on the fact that the timeliness of the filing of the petition is "of the essence" to the right to proceed in post-conviction proceedings, the Tennessee Supreme Court has held that "once the legislature provides prisoners with a method for obtaining post-conviction relief, prisoners must be afforded an opportunity to seek this relief at a meaningful time and in a meaningful manner." *Whitehead v. State*, 402 S.W.3d 615, 623 (Tenn. 2013) (internal quotations omitted). Therefore, a prisoner's right to due process requires the tolling of the statute of limitations in certain circumstances not provided for in the statute. *Whitehead*, 402 S.W.3d at 623.

The "three circumstances in which due process requires tolling of the statute of limitations [are]: (1) claims arising after the statute of limitations has expired; (2) claims

- 5 -

based on mental incompetence that prevented the petitioner from complying with the statute of limitations; and (3) claims based on attorney misconduct." *Lowe v. State*, 703 S.W.3d 319, 331 (Tenn. Crim. App. 2024) (citing *Whitehead*, 402 S.W.3d at 623-24). The Petitioner argues he is entitled to an evidentiary hearing on the issue of whether the statute of limitations should be tolled in his case because he presented a prima facie case that his mental incompetence prevented him from complying with the statutory deadline.

This Court reviews the summary dismissal of a petition for post-conviction relief *de novo*. *Burnett v. State*, 92 S.W.3d 403, 406 (Tenn. 2002). In addition, "[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we [also] review *de novo* with no presumption of correctness." *Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011) (quoting *Harris v. State*, 301 S.W.3d 141, 145 (Tenn. 2010)).

In addressing the issue of whether mental incompetency tolls the statute of limitations, the post-conviction court's "inquiry should begin with a presumption that the petitioner or prisoner is competent." *Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 512 (Tenn. 2013) (first citing Tenn. Sup. Ct. R. 28, § 11(B)(2) and then citing *In re Conservatorship of Groves*, 109 S.W.3d 317, 329-30 (Tenn. Ct. App. 2003)). A petitioner "must make a prima facie showing [of incompetency] by submitting affidavits, depositions, medical reports, or other credible evidence that contain specific factual allegations showing the "petitioner's incompetence." *Reid*, 396 S.W.3d at 512. "While affidavits and depositions of mental health professionals may be utilized, they are not essential, and a petitioner may rely upon affidavits and depositions from family members, prison officials, attorneys, or any other person who has knowledge of facts that demonstrate" incompetency. *State v. Nix*, 40 S.W.3d 459, 464 (Tenn. 2001) (abrogated on other grounds by *Reid*, 396 S.W.3d at 511-13); *see also Lackey v. State*, No. M2012-01482-CCA-R3-PC, 2013 WL 5232345 at *6 (Tenn. Crim. App. Sept. 17, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014). "Unsupported, conclusory or general allegations of mental illness will not be sufficient to require tolling and prevent summary dismissal." *Nix*, 40 S.W.3d at 464.

The *Reid* Court also held that the competency standard to be applied in post-conviction proceedings is whether the petitioner has "the present capacity to appreciate [his or her] position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether the petitioner is suffering from a mental disease, disorder, or defect which may substantially affect the petitioner's capacity." *Reid*, 396 S.W.3d at 512–13 (footnote and internal quotations omitted) (quoting Tenn. Sup.Ct. R. 28, § 11(B)(1)). The question is "whether the [petitioner] is able to make rational decisions concerning the management of his or her post-conviction appeals." *Reid*, 396 S.W.3d at 513.

If a petitioner carries his or her burden to establish a prima facie case of incompetency, then the post-conviction court will "schedule a hearing to determine whether the [petitioner] is competent to manage his [or her] petition," *id*. at 512, and the burden is on the petitioner to prove by clear and convincing evidence that he or she is mentally incompetent, *id*. at 494 (citing Tenn. Code Ann. § 40-30-110(f)). The *Reid* Court further directed post-conviction courts to apply a three-question test set forth in *Rumbaugh v. Procunier*, 753 F.2d 395, 398-99 (5th Cir. 1985), in determining whether the evidence presented at the evidentiary hearing on the issue of mental competency is sufficient for due process tolling. *Reid*, 396 S.W.3d at 513. First, the post-conviction court must determine if the person is "suffering from a mental disease or defect." *Id*. If the answer to this first question is in the negative, then the inquiry is at an end because the person is competent. *Id*. However, if the answer to the first question is in the affirmative, then the post-conviction court must proceed to ask the second question, which is whether "that disease or defect prevent[s] him from understanding his legal position and the options available to him." *Id*. If the second question is answered in the affirmative, the person is incompetent, thus eliminating the need to ask the third question. *Id*. On the other hand, if the answer to the second question is in the negative, then the post-conviction court proceeds to question three, which is whether "that disease or defect, nevertheless, prevent[s] him from making a rational choice among his options." *Id*. If the answer to question three is in the negative, then this will end the inquiry because the petitioner is competent. *Id*. If the answer to the third question is in the affirmative, then the petitioner is incompetent. *Id*.

If the post-conviction court reaches question three, that court must determine if the petitioner can make a rational choice from among the available post-conviction options. *Id*.

> A decision may be rational even when it is not one that the majority would consider acceptable, sensible, or reasonable. A decision is rational when it is based on a process of reasoning. A person's decision-making process is rational when that person can (1) take in and understand information; (2) process the information in accordance with his or her personal values and goals; (3) make a decision based on the information; and (4) communicate the decision.

*Id*. (footnotes and citations omitted).

Here, the post-conviction court appropriately began with a presumption of competency. The next step in determining if an evidentiary hearing is warranted on the tolling issue is to determine if the Petitioner made a prima facie case of mental incompetence through the submission of "affidavits, depositions, medical reports, or other credible evidence that contain specific factual allegations showing the petitioner's incompetence." *Id*. at 512. These submissions may be expert medical evidence or "affidavits and depositions from family members, prison officials, attorneys, or any other

person who has knowledge of facts that demonstrate" mental incompetence. *Nix*, 40 S.W.3d at 464. According to the amended petition and arguments of counsel, the Petitioner relied upon the medical evidence referenced in the trial record and direct appeal opinion on the issues of competency to stand trial and on his motion to suppress his statement, prison medical records, and the proposed testimony of appellate counsel, the Petitioner, Mr. Eads, and Mr. Johnson. Initially, we note that while the Petitioner had witnesses available to testify at the August 2024 hearing, no affidavits or depositions of these witnesses were submitted to the post-conviction court prior to the court's ruling on the State's motion to dismiss. Therefore, the evidence to be submitted by the proposed witnesses, while appropriate for an evidentiary hearing on the issue of tolling, was not properly placed before the post-conviction court for purposes of making the determination of whether a prima facie case of mental incompetency had been made.

On the issue of medical proof, we do not agree with the State's argument or the post-conviction court's finding that there was no expert medical proof relied upon in the Petitioner's pleadings. In the Petitioner's amended petition for post-conviction relief, the Petitioner incorporated through his request for judicial notice the expert proof in the forensic evaluation performed by Dr. Joseph Angelillo pretrial on the issue of competency to stand trial. In consideration of this medical evidence, the post-conviction court concluded that the Petitioner, "in tests throughout the years, consistently test[ed] at a low IQ" and that he "suffers from a mental disease or defect." While we note that mental illness is not the equivalent of mental incompetence, *see id.*, 40 S.W.3d at 463, the issue here is not whether mental incompetence was proven by clear and convincing evidence, but rather whether a prima facie case was made warranting an evidentiary hearing to determine if mental incompetence could be established by clear and convincing proof.

Dr. Angelillo, the defense expert at trial, opined the Petitioner was not competent to stand trial; he explained the various tests performed on the Petitioner and the Petitioner's difficulties with factual understanding, reasoning, and appreciating circumstances which he had demonstrated. Dr. Angelillo also explained how the Petitioner was unable to process and recall information well, gave overly simplistic answers, and showed immature problem-solving skills, significantly impaired reasoning, and significantly impaired appreciation. From these observations, he concluded that the Petitioner's ability to *rationally* understand proceedings was severely impaired. Dr. Angelillo described the Petitioner's ability to entertain options as severely limited. The forensic evaluation also noted that, in a test performed when he was eighteen years old, the Petitioner "function[ed] at the second grade in reading, math, and in most of his other subject areas" and that "[h]is potential for further training appears to be very limited." Furthermore, Dr. Angelillo noted investigators were informed the Petitioner could not read when he was interviewed following his arrest.

The State's expert on competency to stand trial was Dr. John Hutson, and he opined that the Petitioner was intellectually disabled but competent to stand trial. Dr. Hutson's report did not refer to the performance of any psychological tests like those performed by Dr. Angelillo. However, the prison medical records attached to the amended petition indicate the Petitioner has been diagnosed as schizophrenic and psychotic and prescribed Risperdal while incarcerated, but these records are dated after the expiration of the one-year limitations period.

The standard applied on the issue of competency to stand trial is whether the defendant had "the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense." *Mackey v. State*, 537 S.W.2d 704, 707 (Tenn. Crim. App. 1975). This standard is different than the standard applicable to the determination of whether a person is mentally incompetent for purposes of tolling the statute of limitations in post-conviction proceedings, which considers whether the petitioner has "the present capacity to appreciate [his or her] position and make a *rational* choice with respect to continuing or abandoning further litigation or on the other hand whether the petitioner is suffering from a mental disease, disorder, or defect which may substantially affect the petitioner's capacity." *Reid*, 396 S.W.3d at 512–13 (footnote and internal quotations omitted) (emphasis added) (quoting Tenn. Sup.Ct. R. 28, § 11(B)(1)).

After determining the Petitioner suffered from a mental disease or defect based upon his consistently low IQ scores throughout the years, the post-conviction court relied upon the trial court's determination of the Petitioner's competency to stand trial and this court's opinion affirming that conclusion in determining the Petitioner's claimed mental incompetence for purposes of tolling the statute of limitations. These were the only references the post-conviction court made to the pretrial and trial records of which the Petitioner requested the post-conviction court take judicial notice and consider in determining if a prima facie case had been made for a hearing on the due process tolling issue. The post-conviction court referred to the prison medical records but emphasized the lack of records which fell within the one-year limitations period. We find the weight of the evidence is against the trial court's finding and that the Petitioner is entitled to an evidentiary hearing wherein he can attempt to prove his claims by clear and convincing evidence under the standards adopted by the Tennessee Supreme Court in *Reid*. *See Webb v. State*, No. W2013-01250-CCA-R3-PC, 2014 WL 4244028 at *6 (Tenn. Crim. App. Aug. 27, 2014), *perm. app. denied* (Tenn. Jan. 20, 2015) (Based upon records of the petitioner's mental health history both prior to and during incarceration, the State conceded the petitioner was entitled to a remand for a hearing on whether the statute of limitations should be tolled where the petitioner asserted he was "borderline intellectually functioning, suffer[ed] from paranoid schizophrenia, and ha[d] other cognitive limitations and neurological problems."). Clearly, the pretrial records and testimony on the Petitioner's

mental competency must be taken into consideration in combination with the prison medical records in considering the tolling issue.

The pretrial records relied upon must be considered under the standard set forth in *Reid* and Tennessee Supreme Court Rule 28, section 11(B)(1), rather than the standard for competency to stand trial. While the post-conviction court cited to the appropriate standards for determining mental competence for post-conviction at an evidentiary hearing, *see Reid* and *Rumbaugh infra*, the post-conviction court also relied upon the trial and appellate court decisions on the Petitioner's competence to stand trial without noting the differences in the standards or the potential difference in importance of the evidence for one issue versus the other. The applicable standard for mental competence in post-conviction proceedings requires the Petitioner to possess a rational decision-making process and does not contemplate the assistance of counsel. The records relied upon by the Petitioner to make a prima facie case here included a medical expert opinion based upon psychological testing that the Petitioner had difficulty with reality, significantly impaired reasoning skills, and significantly impaired appreciation.[3] In addition, Dr. Angelillo opined that the Petitioner's ability to *rationally* understand proceedings was severely impaired and that the Petitioner was lacking in his ability to understand the alternative courses of action or options available and the consequences or results of each with regards to his ability to decide on the waiver of *Miranda* rights. The pretrial medical expert, therefore, presented evidence concerning the Petitioner's capacity to appreciate his alternatives and make a rational choice between his alternatives and/or whether the Petitioner's mental disease, disorder, or defect may substantially affect the Petitioner's capacity to make a rational decision.

Accordingly, we find the trial court erred in finding the Petitioner failed to make a prima facie case of mental incompetence for due process tolling purposes sufficient to warrant an evidentiary hearing on the issue. To be clear, we do not find that the Petitioner has established that he was incompetent for the purpose of tolling the statute of limitations, we simply find that he has presented sufficient evidence to warrant a hearing on the issue under the appropriate standard.

## III. CONCLUSION

---

[3] In contrast to the Petitioner's medical records here showing several mental disabilities over several years, both prior to and after trial, *see Hall v. State*, No. W2014-00903-CCA-R3-PC, 2015 WL 5682832, at *2 (Tenn. Crim. App. Sept. 25, 2015), *no perm. app. filed*, in which this Court affirmed the summary dismissal of an untimely petition for post-conviction relief finding that the petitioner's assertion "that he was psychotic during the one-year statute of limitations" and "that he was heavily medicated and had a low IQ" did "not state specifically when the Petitioner's mental issues began or what the mental issues were."

Following our review of the record and based upon the foregoing analysis, we reverse the judgment of the post-conviction court summarily dismissing the Petitioner's petition for post-conviction relief and remand this matter for proceedings consistent with this opinion.


s/ *STEVEN W. SWORD*

STEVEN W. SWORD, JUDGE